Filed 6/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GABRIEL L. ROMAN et al., | B246841 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC469016) |
| v. | |
| BRE PROPERTIES, INC. et al., | |
| Defendants and Respondents. | |

————————————

APPEALS from the judgment and orders of the Superior Court of Los Angeles County, Suzanne G. Bruguera, Judge. Affirmed in part, reversed and remanded in part.

Gabriel L. Roman and Luminita Roman, in pro. per., for Plaintiffs and Appellants.

Horvitz & Levy, Peter Abrahams and Julie L. Woods, for Defendants and Respondents, BRE Properties, Inc. and BRE Villa Azure, LLC.

————————————

Gabriel L. Roman and his live-in caregiver and former wife, Luminita Roman, representing themselves in this court as they did in the trial court, appeal from the judgment entered after the court granted summary judgment in favor of BRE Properties, Inc. and BRE Villa Azure, LLC (collectively BRE) terminating the Romans' lawsuit alleging BRE had engaged in disability discrimination when the Romans attempted to view available units at the Villa Azure apartment complex. The Romans contend the trial court improperly sustained BRE's objections to significant portions of their evidentiary presentation and erred in granting summary judgment because they had demonstrated the existence of triable issues of material facts as to their claims for housing discrimination and failure to accommodate Gabriel Roman's disabilities. They also contend the trial court abused its discretion in awarding BRE costs. We affirm the order granting summary judgment but reverse and remand the order awarding costs for further proceedings in light of the Supreme Court's recent decision in *Williams v. Chino Valley Independent Fire District* (2015) 61 Cal.4th 97 (*Williams*).

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Romans' Visit to the Villa Azure Apartment Complex*

On November 2, 2009, shortly before 3:00 p.m., the Romans went to the 624-unit Villa Azure apartment complex without an appointment with the goal of inspecting a two-bedroom apartment that Ms. Roman had seen advertised on-line for a monthly rent of $1,499.[1] Before traveling to the apartment complex, Ms. Roman had spoken by telephone with Melissa Salguero, an employee in the leasing office, who told her the leasing agents were fully booked for that day and, if she elected to come without an appointment in any event, she risked not being able to see an apartment. Ms. Roman responded that she and Mr. Roman would take their chances.

---

[1] The two-bedroom units offered at this price were "bonded," which the parties explain means leased at a discounted, below-market rate for the benefit of low income individuals.

Once the Romans were at the apartment complex, Ms. Roman was told by Salguero the leasing agents were busy with clients and no one was available to show her an apartment at that time. Ms. Roman asked Salguero if Salguero could show the Romans the two-bedroom unit, and Salguero said she could not. After waiting for some period, Ms. Roman approached leasing agent Brian Metran, who was then sitting at his desk without a client present. Exactly what occurred from this point forward is disputed, but the parties agree the Romans left without seeing any apartments, never returned to the Villa Azure complex and never submitted a rental application (although the following day Ms. Roman apparently made an appointment to view an apartment on November 5, 2009, an appointment she did not keep).

According to the Romans, Ms. Roman initially asked to see the general manager, and Metran told her he was not there. She then said to Metran they were there to see the two-bedroom units for rent. Metran replied they would have to make an appointment and return another day, explaining the company's policy was not to show apartments to walk-ins. Ms. Roman asked Metran to waive the policy as a reasonable accommodation because Mr. Roman was emotionally disabled and they could not know whether he would feel well enough to be able to return at a specified future time. Metran explained he was not authorized to waive the policy. Ms. Roman then suggested, rather than try to convince her why he could not show them the $1,499/month apartment, he actually show it to them. Metran replied the $1,499 apartments were all taken. Asked about other two-bedroom apartments, Metran said there were no two-bedroom apartments available at any price at that time. Ms. Roman asked Metran for his name and to confirm in writing that there were no $1,499/month units available, which he did. The Romans then left.

According to BRE, Metran agreed to speak to Ms. Roman, but cautioned he had several upcoming appointments and other guests waiting to see him in the lobby. Although he was alone at his desk when Ms. Roman approached, he was inputting customer information into his BRE computer from a showing he had just completed. When asked about the $1,499/month apartment, Metran told Ms. Roman none was

3

available. He also told Ms. Roman he would be happy to show her apartments later that day if she was willing to wait and suggested, as an alternative, she schedule an appointment for another day. Ms. Roman, however, insisted on being shown apartments immediately, ahead of scheduled appointments and other prospective applicants because Mr. Roman was "handicapped." In his declaration in support of summary judgment, Metran stated Ms. Roman did not explain the nature of Mr. Roman's disability and he did not suspect Mr. Roman was disabled prior to Ms. Roman's comment.

2. *The Romans' Lawsuit for Disability Discrimination*

On September 6, 2011 the Romans sued BRE for injunctive and declaratory relief and damages, alleging disability discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12955), the Unruh Civil Rights Act (Civ. Code, § 51), Civil Code section 54, commonly called the Disabled Person Act (DPA), and Business and Professions Code section 17200 (UCL), as well as negligence (based on the duty to operate rental premises in a manner that was free of discrimination and to train employees to fulfill that duty).[2] With respect to the Romans' standing to allege violations of the statutes cited, the complaint alleged Mr. Roman is a "qualified person with a disability, as defined within the meaning of California Government Code, § 12955.3" and Ms. Roman his live-in caregiver and former wife. The complaint elaborated, "Gabriel L. Roman is emotionally and physically disabled. One of his diagnoses is major depression, also as a result of a car accident from January 2009, [he] sustained a herniated disc [causing him] excruciating low back and right leg pain, for which he had undergone spine surgery since, on July 30, 2010." The complaint further alleged Mr. Roman has a

_____

[2] The Romans also sued Level One, LLC, and its parent company, L1 Holdings, Inc., which they alleged BRE had hired to make and receive customer calls on its behalf. According to the complaint, Level One illegally recorded calls made by Ms. Roman without her consent, violating Penal Code section 632 and her common law right of privacy. Those causes of action were resolved as to all defendants, and Level One and L1 Holdings were dismissed from the lawsuit prior to the summary judgment motion at issue in this appeal.

4

voucher for rental assistance through the federal government's Section 8 housing program, which allows him and his caregiver to rent a two-bedroom apartment with the local housing authority paying costs in excess of 40 percent of Mr. Roman's adjusted monthly income.

In addition to reciting the events of November 2, 2009, the complaint alleged that approximately a month earlier Ms. Roman had been advised by BRE employees or its agents that BRE did not accept Section 8 housing vouchers at any of their rental properties. Ms. Roman thereafter spoke to individuals in BRE's legal department, including general counsel Kerry Fanwick, and asked if an exception to the policy against accepting Section 8 vouchers could be made as a reasonable accommodation for Mr. Roman's disability. The Romans allege Ms. Roman was told by Mary Finley (a nonlawyer manager of risk and legal affairs) such an exception would be made but she was advised not to discuss the Section 8 voucher with the on-site leasing agents when she and Mr. Roman went to see units. Finley said the legal department would make sure the voucher was accepted once the Romans found a unit they wanted to rent.

The day after the Romans' unsuccessful visit to Villa Azure, Ms. Roman sent an email to Fanwick complaining about the discrimination they had encountered. During the following week Ms. Roman, Fanwick and Finley exchanged a series of telephone calls and emails in which BRE again insisted no two-bedroom apartments had been available at Villa Azure on November 2, 2009 and denied there had ever been an agreement to accept Mr. Roman's Section 8 vouchers as an accommodation for his disability.

3. *BRE's Motion for Summary Judgment*

    a. *The moving papers*

Prior to June 8, 2012, when BRE moved for summary judgment, the Romans had refused to respond to any discovery propounded by BRE and did not appear for their depositions. In its moving papers BRE argued Ms. Roman lacked standing to assert claims relating to disability discrimination, there was no evidence Mr. Roman was

5

disabled within the meaning of the statutes asserted as the bases for his claims, the Romans' demand to be seen immediately was not a reasonable or necessary accommodation and acceptance of Section 8 housing vouchers is not required as a reasonable accommodation for a disability. BRE also asserted there is no reasonable accommodation requirement under the Unruh Act and no cause of action for negligent failure to provide reasonable accommodation. In addition, BRE contended the Romans could not prove causation or damages because any injury suffered was the result of the unavailability of two-bedroom apartments at a price the Romans were willing to pay and not the alleged failure to accommodate Mr. Roman's disability.

In support of its motion BRE presented evidence of rent rolls, which it asserted demonstrated there were no two-bedroom apartments available to rent for $1,499 during the period November 2 through November 5, 2009. BRE also submitted declarations from Metran and Finley concerning their respective interactions with the Romans.

b. *The Romans' opposition papers*

In opposition the Romans submitted their own declarations, which essentially repeated the description of events from their perspective as alleged in the complaint.[3] In their memorandum of points and authorities the Romans in part argued that Ms. Roman, as Mr. Roman's live-in caregiver, had standing under Government Code section 12955, subdivision (m), as a person "associated with" a person who has a disability[4] and that,

---

[3]     One difference between the allegations in the unverified complaint and Ms. Roman's sworn declaration in opposition to BRE's motion concerned Ms. Roman's explanation to Metran as to the need to waive the policy of not showing apartments without an appointment. In paragraph 20 of the complaint the Romans alleged Ms. Roman explained that Mr. Roman "is disabled, that he has good days and bad days due to his disability, and that day was a good day for him." In her declaration Ms. Roman stated, "I then told him that I am asking him to waive the policy as reasonable accommodation request considering that Mr. Roman is with me and disabled and he will not be able to come any time."

[4]     The week before the continued hearing date on the summary judgment motion, and more than three weeks after filing their opposition memorandum, the Romans filed a request for judicial notice of a 2004 joint statement by the United States Departments of

having clearly stated to Metran that Mr. Roman was disabled when visiting Villa Azure on November 2, 2009, it was BRE's responsibility to ask for additional proof if it believed it was necessary. The Romans also argued the accommodations requested—being shown an apartment without first making an appointment notwithstanding BRE's policy not to do so and accepting Section 8 housing vouchers—were both reasonable and necessary under the circumstances. In addition, they asserted (and stated in their declarations) that as a result of his mistreatment at Villa Azure Mr. Roman suffered "emotional and mental injuries that complicated and worsened his clinical depression and mental stability which affected his perception of physical pain, including right leg pain, headaches and chest pain," and Ms. Roman suffered "general damages which naturally arise out of discriminatory acts directed toward any individual, including inconvenience, worry, sadness, humiliation, depression, etc."

Ms. Roman's declaration also stated in her initial conversation with Fanwick in October 2009 she told him Mr. Roman "is a person living with disabilities" and is unable to work because he is disabled and lives on his monthly payments from the federal government's Supplemental Security Income (SSI) program. On October 7, 2009 Ms. Roman told Finley Mr. Roman is disabled and on SSI. Her declaration contained no other description or details of Mr. Roman's disability. Similarly, other than the assertion that BRE's discrimination worsened his clinical depression and mental stability, Mr. Roman's declaration contained no description of his disability. No medical records or other evidence of that disability was provided with the Romans' opposition papers.

---

Housing and Urban Development and Justice on reasonable accommodations under the federal Fair Housing Act (42 U.S.C. §§ 3601-3619). The Romans pointed to a footnote in the joint statement that stated, "The Fair Housing Act's protection against disability discrimination covers not only home seekers with disabilities but also buyers and renters without disabilities who live or are associated with individuals with disabilities [citations]."

c. *The hearing on the motion; the court's ruling*

After BRE filed evidentiary objections to the Romans' declarations and a reply memorandum, the court heard oral argument on September 12, 2012. During the hearing counsel for BRE specifically argued, "Fundamental to a claim for disability discrimination, a claimant must suffer from a disability as defined by FEHA. So not just a disability but a qualified disability under FEHA. . . . And the FEHA definition is incorporated into the Unruh and Disabled Persons Act. To this point, the plaintiffs have not attempted to demonstrate to this court by competent evidence Mr. Roman's disability. They simply refer the court and BRE to their complaint and to their own say-so, thereby failing to satisfy their burden to create triable issues of material fact as to that element." Counsel then turned to other aspect of BRE's arguments in support of its motion.

Ms. Roman responded to the moving parties' argument on behalf of both plaintiffs. For the most part, she simply repeated her version of the events that had precipitated the lawsuit and did not respond to BRE's legal arguments.[5] With respect to the issue of presenting at least prima facie evidence that Mr. Roman suffered a disability within the meaning of the governing statutes, Ms. Roman insisted, as the Romans had in their opposition papers, "[i]f Mr. Metran would have been not satisfied that Mr. Roman is disabled, it would have been incumbent upon him to request more proof of his disability." She did not direct the court to any evidence in either opposition declaration or additional material otherwise in the record that established Mr. Roman's disability within the meaning of FEHA, nor did she ask for a continuance to enable the Romans to provide the

_____

[5]     In her account in court of what had occurred on November 2, 2009, Ms. Roman gave a much more expansive description of her statement to Metran concerning the need for BRE to waive its policy of not showing apartments to walk-ins: "I informed him that, 'Mr. Roman is with me. He's a person living with disabilities. He has good days and bad days. Today happens to be a good day. We don't know how he's going to feel tomorrow or [any] other day. You're pretty far from where we are at; so I'm asking you to waive your rule, policy, and procedure as not to show units to walk-ins and to show us a two-bedroom for rent."

court with that essential information. The court concluded the hearing without indicating whether it was inclined to grant or deny the motion.

On September 28, 2012 the court issued its ruling granting BRE's motion for summary judgment in its entirety. Although BRE had apparently submitted a proposed order granting the motion following the September 12, 2012 hearing, as suggested by the court,[6] on October 22, 2012 the court signed and filed its order granting the motion by interlineating a proposed order that had been submitted with BRE's original moving papers in June 2012. The sole basis given by the court for its ruling was "Plaintiffs' failure to carry burden with admissible evidence." On the same date the court signed and filed its rulings on BRE's evidentiary objections, sustaining most, but not all, of the objections. BRE gave notice of the entry of the orders on November 2, 2012.

Judgment was entered on December 21, 2012. As entered, the judgment provided, "As prevailing party under Civil Procedure Code sections 1032 and 1033.5, BRE is entitled to an award of allowable costs as a matter of right."

4. *The Award of Costs*

BRE sought costs of $4,994.98. Relying principally on this court's decision in *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, the Romans moved to strike the cost bill, arguing it would be an abuse of discretion to award costs to a prevailing party defendant in a FEHA case unless the plaintiffs' claims were frivolous, unreasonable or groundless—a standard the Romans asserted was not satisfied in this case. The Romans additionally argued certain of the costs for which BRE sought reimbursement were unnecessary (an argument that is not repeated on appeal) and, alternatively, requested that they be excused from paying the award by demonstrating hardship/inability to pay.

---

[6] The Romans submitted a proposed order denying the motion following the hearing. In addition, the Romans filed objections to the proposed order submitted by BRE.

9

The court denied the motion to tax costs. The court ruled the "frivolous, unreasonable or groundless" standard applied in FEHA cases only to an award of attorney fees to a prevailing party defendant, not an award of costs under Code of Civil Procedure section 1032, subdivision (b),[7] citing *Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121 and *Perez v. County of Santa Clara* (2003) 111 Cal.App.4th 671, both of which had disagreed with our contrary holding in *Cummings*. (Our decision in *Cummings* had reversed a combined award of attorney fees and costs as an abuse of discretion.) In addition, the court explained, the Romans had asserted several statutory claims in addition to their FEHA cause of action; and the mandatory provision in section 1032, subdivision (b), governed the award of costs to the successful party on those causes of action. The court also ruled California law does not exempt an unsuccessful indigent party from an award of costs; and, in any event, there was no evidence of Ms. Roman's indigency. Finally, the court found the costs BRE sought to recover were both reasonably necessary and reasonable in amount. The court awarded the full $4,994.98 sought by BRE.

The Romans filed separate notices of appeal from the judgment and the postjudgment order denying their motion to tax costs and awarding costs. We consolidated the two appeals.

**DISCUSSION**

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342,

---

[7] Statutory references are to this code unless otherwise indicated.

10

1348.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703; *Schachter*, at p. 618.)

When a defendant moves for summary judgment in a situation in which the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. Alternatively, the defendant may present evidence to "'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield, Co.* (2001) 25 Cal.4th 826, 853; see § 437c, subd. (p)(2).) "'"'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action."'" (*Ennabe v. Manosa*, *supra*, 58 Cal.4th at p. 705; accord, *Wilson v. 21st Century Ins. Co*. (2007) 42 Cal.4th 713, 720 [same]; *Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1002-1003 ["the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence'"].) Once the defendant's initial burden has been met, the burden shifts to the plaintiff to demonstrate, by reference to specific facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action. (§ 437c, subd. (p)(2); *Aguilar*, at p. 850.)

2. *Summary Judgment Was Properly Granted Based on the Romans' Failure To Present Any Evidence Gabriel Roman Suffered from a Disability*

FEHA prohibits, as unlawful discrimination, a "refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." (Gov. Code, § 12927, subd. (c)(1).) "In order to establish discrimination based on a refusal to provide reasonable accommodations, a party must establish that he or she (1) suffers from a disability as defined in FEHA, (2) the discriminating party knew of, or should have known of, the disability, (3) accommodation is necessary to afford an

11

equal opportunity to use and enjoy the dwelling, and (4) the discriminating party refused to make this accommodation." (*Auburn Woods I Homeowners Assn. v. Fair Employment & Housing Com.* (2004) 121 Cal.App.4th 1578, 1592.)

Government Code section 12955.3 provides that "disability" includes "any physical or mental disability as defined in [Government Code] Section 12926. Government Code section 12926, subdivision (j)(1), in turn, defines "mental disability" to include "any mental or psychological disorder or condition . . . that limits a major life activity," that is, that "makes the achievement of the major life activity difficult." (Gov. Code, § 12926, subd. (j)(1)(B).) "Physical disability" includes any physiological disease, disorder or condition that both affects one or more body systems ("neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin and endocrine") and "limits a major life activity." (Gov. Code, § 12926, subd. (m)(1).) Government Code section 12926.1, subdivision (c), further defines mental disabilities to include "clinical depression" and states, "[T]he Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the federal Americans with Disabilities Act of 1990, a 'substantial limitation.' This distinction is intended to result in broader coverage under the law of this state than under that federal act. Under the law of this state, whether a condition limits a major life activity shall be determined without respect to any mitigating measures . . . ."

The DPA incorporates as its definition of "disability" the definitions contained in Government Code section 12926. (Civ. Code, § 54, subd. (b)(1).) Similarly, the Unruh Civil Rights Act incorporates the definitions of mental or physical disability included in Government Code sections 12926 and 12926.1. (Civ. Code, § 51, subd. (e)(1).)

Apparently recognizing the essential nature of this element of their claims, the Romans alleged in their complaint that Mr. Roman "is a qualified person with a

12

disability, as defined within the meaning of California Government Code § 12955.3."[8] In its motion for summary judgment, however, based on the Romans' failure to respond to written discovery or appear for their depositions, BRE argued, notwithstanding that allegation, there was no evidence Mr. Roman was disabled within the meaning of FEHA and, therefore, entitled to the protection of FEHA or the other statutes upon which they based their claims.[9] That was sufficient to shift to the Romans the burden to make a prima facie showing that Mr. Roman was, in fact, disabled within the meaning of the relevant statutes. (See *Ganoe v. Metalclad Insulation Corp.* (2014) 227 Cal.App.4th 1577, 1582 [defendant's summary judgment motion can consist of plaintiff's factually devoid discovery response from which an absence of evidence can be inferred]; *Mastro v. Petrick* (2001) 93 Cal.App.4th 83, 87 [defendant may rely upon factually insufficient discovery response by plaintiff to show that plaintiff cannot establish an essential element of the cause of action sued upon].)

Remarkably, the Romans did not answer this argument by offering any factual support for their allegation that Mr. Roman was disabled. Rather than presenting any medical evidence of a disability as defined by FEHA or even a discussion in Mr. Roman's declaration of the nature of his disability and its impact on a major life activity, they focused exclusively on what they believed were BRE's obligations during

---

[8]     Although the Romans are representing themselves, Mr. Roman is no stranger to disability rights litigation. (See, e.g., *Roman v. Jefferson at Hollywood LP* (9th Cir. 2012) 495 Fed.Appx. 804, 805 [2012 U.S. App. Lexis 22518] [affirming district court's 2011 dismissal of federal Fair Housing Act lawsuit in which Mr. Roman, representing himself, alleged reasonable accommodation discrimination based on landlord's failure to waive a $75 per month storage fee and refusal to immediately move him to a top-floor unit].)

[9]     BRE's separate statement of undisputed facts filed with its moving papers on June 8, 2012 identified the discovery that had been served and noted that the Romans had not served responses or objections as of the due dates or at any time prior to the filing of the motion, nor had they moved for a protective order to limit their discovery obligations. Among the written discovery demands were requests for information and documents concerning Mr. Roman's physical, mental or emotional conditions.

13

the encounter on November 2, 2009, insisting Ms. Roman's statement to Metran that Mr. Roman was disabled was sufficient to trigger a duty to inquire further if there was any doubt as to the legitimacy of that assertion. Whether or not that was an accurate interpretation of BRE's duties when an individual with a disability asks to see an apartment without an appointment, it is entirely insufficient to meet the Romans' burden of demonstrating by admissible evidence a triable issue of material fact regarding Mr. Roman's claimed disability under FEHA, the DPA and the Unruh Civil Rights Act. Absent such evidence, summary judgment was properly granted to BRE. (See *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 47 ["To qualify as a member of the protected class under FEHA, Gelfo must demonstrate his impairment constitutes a disability according to the statutory definition. [Citation.] It is insufficient for Gelfo simply to allege a disability or to identify an injury or physical condition."].)

On appeal the Romans attempt to overcome this fatal deficiency in their opposition papers by asserting in the argument portion of their opening brief, "As evidenced above in the facts of the case, the record before the Trial Court shows that admissible evidence was brought forth by Mr. Roman that he is disabled." That statement is unsupported by any citation to the record and is properly disregarded. (Cal. Rules of Court, rule 8.204(a)(1)(C) [any reference to a matter in the record must be supported by a citation to the volume and page number of the record where the matter appears]; see *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1037; *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) Moreover, nowhere in their 10 page statement of facts (or the four page statement of the case) do the Romans cite to admissible evidence properly before the trial court on the motion for summary judgment demonstrating that Mr. Roman suffers from a disability within the meaning of FEHA. Instead, the Romans identify only allegations in their unverified complaint, portions of the declarations submitted in opposition to the motion describing statements made by Ms. Roman to BRE's employees or agents and the requests for fee waiver and accommodations Mr. Roman had presented to the trial court prior to the summary

14

judgment hearing.  None of these sources constituted prima facie proof of Mr. Roman's disability.

Citation to their own pleading is meaningless:  It is fundamental that to defeat summary judgment a plaintiff must show "specific facts" and cannot rely on allegations of the complaint.  (*Regional Steel Corp. v. Liberty Surplus Ins. Corp.* (2014) 226 Cal.App.4th 1377, 1388; *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1385-1386.)  Similarly, neither Ms. Roman's declaration describing her own statements regarding Mr. Roman's disability to BRE employees, whether made orally during the November 2, 2009 encounter, on the telephone on other occasions, or in email communications, nor Mr. Roman's declaration recounting his conversations with Ms. Roman concerning BRE's responses, constitutes evidence that Mr. Roman in fact suffered from a disability within the meaning of FEHA.  Even if admissible as a proper, nonhearsay lay opinion, contrary to the trial court's rulings sustaining BRE's evidentiary objections,[10] the Romans' conversational use of the term "disability" is not proof that Mr. Roman's condition, whatever it may be, equates to a disability within the meaning of the statutory definitions discussed above.  (See *Gelfo v. Lockheed Martin Corp., supra*, 140 Cal.App.4th at p. 47.)

Finally, the Romans' reliance on information in Mr. Roman's fee waiver request and requests for accommodations in the trial court, all of which were granted, is entirely misplaced.[11]  Notwithstanding clear notice that BRE was moving for summary judgment,

_____

[10]    Our analysis of the trial court's order granting summary judgment includes all of the material presented by the Romans with their opposition papers without regard to the court's evidentiary rulings sustaining many of BRE's objections.  It is, therefore, unnecessary for us to consider the Romans' challenge to those rulings.

[11]    Information purportedly contained in a declaration submitted by Mr. Roman in support of the Romans' motion to tax costs is equally unavailing.  That document, which Mr. Roman asked be filed and maintained under seal, was not presented to the court until after its ruling on summary judgment and was ordered returned to Mr. Roman "unfiled and not scanned by the court's imaging system."  Mr. Roman's request to augment the record on appeal to include this unfiled document was denied.  The Romans cannot

15

among other reasons, on the ground there was no evidence Mr. Roman in fact suffered from a disability within the meaning of FEHA—an essential element of their claims—the Romans made a tactical decision to disregard that argument and failed to include with their opposition papers any information in support of the complaint's allegation of a qualifying disability. Material not presented in opposition to the summary judgment motion itself is not properly considered by the court in ruling on the motion. (See *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037 ["[b]ecause this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion"]; *Artiglio v. Corning Inc*. (1998) 18 Cal.4th 604, 608 [appellate court reviews propriety of ruling on summary judgment "based on the record before the trial court on summary judgment"]; *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1109 ["[b]ecause this case comes before us after the trial court granted a motion for summary judgment, we consider the evidence in the record before the trial court when it ruled on that motion"].)

In addition, Mr. Roman filed his requests for a fee waiver and accommodations under seal in the trial court, as was his right. (Cal. Rules of Court, rules 1.100(c), 3.54.) In granting the Romans' request to augment the record on appeal to include those documents, this Court honored that confidentiality and directed the augmented record be filed under seal. Although it was entirely proper for the trial court to grant a fee waiver and accord Mr. Roman reasonable accommodations to ensure his full access to the courts based on personal information not shared with BRE, under our adversarial system of justice, BRE was entitled to see and respond to any evidence offered by the Romans in opposition to its motion for summary judgment: "'It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the

demonstrate the superior court committed error in granting summary judgment by relying on material in a document that was never filed with the trial court, not served on BRE, and is not part of the record on appeal.

16

appearance and reality of fairness in the adjudications . . . .  It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of ex parte, in camera submissions.'"  (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1326, quoting *Abourezk v. Reagan* (D.C.Cir. 1986) 785 F.2d 1043, 1060.)  Accordingly, none of the information contained within these sealed documents was properly before the trial court in connection with BRE's summary judgment motion, and the court committed no error by not considering it.[12]

   3. *The Romans Did Not Request a Continuance of the Summary Judgment Hearing*

The Romans propounded discovery on BRE and were dissatisfied with the responses provided.  On February 16, 2012 they moved to compel further responses.  BRE opposed the motion, arguing the Romans were not entitled to any further information because the material sought was protected from discovery by the attorney-client privilege, no longer existed (video and audio recordings that had been recorded over) or was irrelevant (unredacted rent rolls providing information on units that were already leased during the first week of November 2009).[13]  A hearing on the discovery dispute was held on March 15, 2012, but no ruling was made prior to the hearing on BRE's motion for summary judgment.  After granting summary judgment, the court ruled

---

[12]    The Romans do not separately address the various statutory bases for their claims of disability discrimination/failure to make reasonable accommodations.  As discussed, FEHA, the Unruh Civil Rights Act and the DPA all contain the same definition of disability; and the Romans' failure to present prima facie proof that Mr. Roman suffered from a qualifying disability is dispositive of all those claims.  Similarly, because Ms. Roman's standing is dependent on her claim she was the victim of discrimination because she was "associated with" a person who has a disability, the gap in Mr. Roman's evidentiary presentation defeats her claims as well.  Finally, the Romans' claims for negligence, violation of the UCL and declaratory relief are all derivative of Mr. Roman's disability discrimination claims.  They fall with the statutory discrimination claims.

[13]    BRE explains in its brief on appeal that it offered to produce unredacted rent rolls if the Romans would agree to a protective order.  The Romans apparently were unwilling to do so.

17

the motion to compel was moot although it noted some of the issues in dispute had been resolved.

Because their motion to compel further discovery was still pending, the Romans contend the trial court should have denied BRE's motion for summary judgment under section 437c, subdivision (h), to allow more time for discovery.[14] Although that provision authorizes the trial court to either continue the hearing on the summary judgment motion or deny the motion to permit the opposing party to obtain necessary discovery, it was the Romans' responsibility to request such an order and to demonstrate, either in their opposition papers or in a separate application filed no later than their opposition papers, that the missing discovery was required. (See *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633 [party seeking continuance must show facts to be obtained are essential to opposing the motion and those facts could not have been presented with the opposition papers]; see also *Lloyd Design Corp. v. Mercedes-Benz of North America, Inc.* (1998) 66 Cal.App.4th 716, 726 ["[b]y indicating that the court had 'more than enough' evidence before it to sustain a ruling in Lloyd's favor, Lloyd gave the trial court sufficient reason not to continue the motion for purposes of allowing further discovery"].) They did neither and, instead, argued the evidence before the court was sufficient to defeat summary judgment. Accordingly, they have forfeited this argument on appeal. (*Lewinter v. Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1224 [appellate court will not review an objection to a trial court ruling on a summary judgment motion when the objecting party "failed to request a continuance of the hearing on the summary judgment motion for the purpose of conducting additional discovery"]; see *Clark v.*

---

[14] Section 437c, subdivision (h), provides, "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

18

*Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 182, fn. 32 ["[t]o the extent . . . plaintiffs argue in passing that they should have been permitted to conduct further discovery in connection with the [defendant's] motion [for summary judgment], they waived such argument by failing to request a continuance to conduct discovery in the trial court"].)

4. *The Order Awarding Costs to BRE Must Be Reconsidered in Light of Williams v. Chino Valley Independent Fire District*

a. *Costs may be awarded to a prevailing defendant in a FEHA action only if the court finds the plaintiff brought or continued the litigation without an objective basis for believing it had potential merit*

As discussed, the trial court rejected the Romans' argument, based on this court's holding in *Cummings v. Benco Building Services, supra,* 11 Cal.App.4th 1383, that a prevailing defendant in a FEHA action may recover costs only upon a showing that the lawsuit was frivolous or objectively without foundation, ruling costs were recoverable by the prevailing party in a FEHA action—plaintiff or defendant—as a matter of right under section 1032, subdivision (b).[15] Last month in *Williams, supra,* 61 Cal.4th 97 the Supreme Court reached the contrary conclusion, holding Government Code section 12965, subdivision (b),[16] vests discretion in the trial courts regarding an award of costs to the prevailing party in a FEHA action as well as with respect to an award of attorney fees. (*Williams*, at p. 99.) The Court further held the trial court's discretion in awarding either costs or attorney fees is bounded by the rule of *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 [98 S.Ct. 694, 54 L.Ed.2d 648]: "[A]n unsuccessful FEHA plaintiff should not be ordered to pay the defendant's fees or costs unless the

---

[15]    Section 1032, subdivision (b), provides, "Except as otherwise provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."

[16]    Government Code section 12965, subdivision (b), in part provides, "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees."

19

plaintiff brought or continued litigating the action without an objective basis for believing it had potential merit." (*Williams*, at pp. 99-100.) The Court expressly disapproved *Perez v. County of Santa Clara, supra*, 111 Cal.App.4th 671 and *Knight v. Hayward Unified School Dist., supra*, 132 Cal.App.4th 121, the cases upon which the trial court had relied, as well as *Hatai v. Department of Transportation* (2013) 214 Cal.App.4th 1287, which, like *Perez* and *Knight*, had declined to follow our decision in *Cummings*. (*Williams*, at p. 115.)[17]

In reaching its conclusion the *Williams* Court explained that Government Code section 12965, subdivision (b), "is an express exception to Code of Civil Procedure section 1032, subdivision (b). Government Code section 12965, subdivision (b), rather than being silent as to either party's recovery of costs, expressly states that both parties are allowed costs in the trial court's discretion, a standard expressly differing from the entitlement to costs provided under Code of Civil Procedure section 1032, subdivision (b)." (*Williams, supra,* 61 Cal.4th at p. 105.) The Court further held, "[T]he language and history of Government Code section 12965, subdivision (b), persuade us the Legislature intended a trial court's discretion to be exercised in the same manner for costs as for attorney fees. The statute treats the two in parallel and without distinction, providing discretion in the award of 'attorney's fees and costs' to a prevailing FEHA party. [Citation.] . . . And while ordinary costs are generally likely to be smaller than attorney fees, a broader application of *Christiansburg* is nonetheless consistent with legislative policy. In FEHA cases, even ordinary litigation costs can be substantial, and the possibility of their assessment could significantly chill the vindication of employees' civil rights." (*Williams*, at p. 114.)

Because it applied an incorrect legal standard at the urging of BRE, the trial court was not asked to and did not make findings under *Christiansburg*. In a similar situation, albeit one dealing with an award of attorney fees to the prevailing FEHA defendant rather

[17]    We invited the parties to submit supplemental letter briefs addressing the effect of *Williams* on the cost issue in this case.

than a discretionary award of costs, this court in *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859 held, to avoid undermining the important public policy issues implicated by an award of fees to the defendant in an antidiscrimination case, "where the required findings are not made by the trial court, the matter must be reversed and remanded for findings, unless the appellate court determines no such findings reasonably could be made from the record." (*Id.* at p. 868.)

Based on the evidence presented by the parties on BRE's motion for summary judgment, we cannot say the required finding would be unreasonable in this case. That is, the trial court might reasonably determine the Romans' action was objectively without foundation when brought, thus satisfying the *Christiansburg* standard for an award of costs. (See *Williams, supra,* 61 Cal.4th at p. 115.) At the very least, that is a question that should be addressed by the trial court in the first instance.

b. *The inclusion of additional theories of liability does not divest the trial court of its discretion in awarding costs to a prevailing FEHA defendant*

Whether the cost award was nonetheless proper in this case or a remand for findings under *Williams* is necessary turns on the propriety of the trial court's alternate ruling that, regardless of the FEHA standard, the mandatory language of section 1032, subdivision (b), governed the award of costs in this case because the Romans unsuccessfully pursued causes of action against BRE under several statutes other than FEHA (the Unruh Civil Rights Act, the DPA and the UCL) and for negligence. This alternate ground for denying the motion to tax costs, like the court's FEHA-based ruling itself, was error.

None of the non-FEHA causes of action asserted by the Romans involve statutes that expressly except an award of costs from the mandatory provisions of section 1032, subdivision (b), as does Government Code section 12965, subdivision (b). For example, Civil Code sections 52 and 54.3, the remedial provisions for the Romans' Unruh Civil Rights Act and DPA claims, authorize a fee award only to prevailing plaintiffs but are silent as to an award of costs to a prevailing defendant. (See generally *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1058-1059

21

(*Turner*).) Plainly, then, if the Romans' pleading of non-FEHA causes of action had led BRE to incur additional allowable costs (for example, the cost of taking a deposition not otherwise required to contest the FEHA claim), BRE would be entitled to recover at least those costs under section 1032, subdivision (b), without first satisfying the *Christiansburg* standard. (See *Turner*, at p. 1073 & fn. 20; cf. *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130 [discussing apportionment of attorney fees between claims as to which fees are recoverable and those where they are not]; *Akins v. Enterprise Rent-A-Car Co*. (2000) 79 Cal.App.4th 1127, 1133 ["[w]hen a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action"].)[18] The issue here, however, is the recovery of otherwise allowable costs incurred as the result of defending intertwined and inseparable FEHA and non-FEHA claims: Does the *Williams* rule of discretion apply to costs that cannot be apportioned between overlapping FEHA and non-FEHA claims or does the mandatory provision of section 1032, subdivision (b), control?

In considering the similar issue of fee awards in the context of antidiscrimination litigation, the Supreme Court has said, "The general rule is that where a non-fee-shifting claim overlaps with a fee-shifting claim, it does not limit fee awards under the fee-shifting claim. [Citation.] An exception may arise where to award fees on the fee-shifting claim would impair legislative polices implicated by the respective claims." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1056.) Applying that principle here, we believe it would weaken private enforcement of vital antidiscrimination and disability rights statutes, "tend[ing] to discourage even potentially meritorious suits by plaintiffs with limited financial resources" (*Williams, supra,* 61 Cal.4th at p. 113), to compel an award of costs under section 1032, subdivision (b), simply because the plaintiff, based on the

---

[18] Whether in this case there were any allowable costs incurred by BRE that can be allocated to the Romans' non-FEHA claims must be determined by the trial court on remand.

22

same alleged misconduct, had pleaded other civil rights theories in addition to his or her FEHA causes of action.

To be sure, plaintiffs with disability access claims like the Romans could elect not to pursue relief under the Unruh Civil Rights Act or the DPA, relying solely on their rights under FEHA, thereby controlling "the relative risks, burdens and benefits by selecting from among several statutory options." (*Molski v. Arciero Wine Group* (2008) 164 Cal.App.4th 786, 791; see *Jankey v. Lee, supra*, 55 Cal.4th at p. 1055 ["Congress's concern about not discouraging would-be plaintiffs from availing themselves of the ADA thus offers no reason to preclude states from establishing different fee award regimes for independently established state law remedies"].)  But, by definition, the overlapping costs with which we are concerned here have not added to the burden of the litigation on the party defending against FEHA claims; and, as the *Williams* Court held, the Legislature expressly intended the trial court to use *Christianburg*'s asymmetrical standard when evaluating an award of costs in those instances.  (See *Turner, supra*, 193 Cal.App.4th at p. 1071 [denying recovery of attorney fees incurred defending overlapping claims arising under Civil Code sections 52 and 54.3, which authorize fee awards only to prevailing plaintiffs, and section 55, which also authorizes fee awards to prevailing defendants; "[t]o conclude that section 55 mandates a fee award to a prevailing defendant for hours intertwined with the defense of claims under sections 52 and 54.3 would frustrate the purposes of the unilateral fee-shifting provisions in sections 52 and 54.3 and undermine enforcement of section 55, even where its inclusion would not add to the burden of the litigation"]; see generally *Crowley v. Katleman* (1994) 8 Cal.4th 666, 691 [explaining, in context of malicious prosecution action, "plaintiff remains free to allege any and all" alternative factual or legal theories "that a reasonable attorney would find legally tenable on the basis of the facts known to the plaintiff at the time"].)

The Supreme Court's decision in *Jankey v. Lee, supra*, 55 Cal.4th 1038 does not compel a different result.  In *Jankey* the Supreme Court considered the relationship of the "broadly worded two-way fee-shifting clause" in actions under Civil Code section 55,

23

part of the DPA, and the narrower provision in the federal Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.; § 12101 et seq. (ADA)), which, as held in *Christiansburg Garment Co. v. EEOC, supra,* 434 U.S. 412, "allows defendants fees only for responding to frivolous claims and makes fee recovery discretionary." (*Jankey*, at pp. 1045, 1047.) The Court held the ADA does not preempt Civil Code section 55 insofar as the state law affords prevailing defendants a broader entitlement to recovery of attorney fees than would federal law. (*Jankey*, at pp. 1049-1056.) After discussing general preemption principles, the doctrine of conflict preemption and quoting language from section 501, subdivision (b), of the ADA that disavows any broad preemptive intent, permitting states to enact and enforce complementary laws protecting the rights of individuals with disabilities, the Court concluded, absent congressional intervention, "California has every right to adopt whatever fee regime it deems appropriate upon invocation of state law remedies. It may establish both the costs of and the potential payoffs for seeking a state remedy while leaving undisturbed the corresponding costs and payoffs that flow from invocation of a comparable federal remedy." (*Jankey*, at p. 1054.) Civil Code section 55's fee-shifting provision does not stand as an obstacle to the accomplishment of Congress's purpose in limiting fees under the ADA to the prevailing defendant, the Court reasoned, because "it is only the invocation of the state law remedy, and not the ADA, that triggers the award of fees in cases of overlap[;] it is only the state law remedy, and not the ADA, that stands to be chilled by the broader availability of defense fees. Plaintiffs can always sue under the ADA alone . . . ." (*Jankey*, at p. 1055.)

The *Jankey* Court, however, addressed only the doctrine of federal preemption and concluded no congressional policy precluded a mandatory award of attorney fees under state law when those fees overlapped with fees incurred in defending a claim under the ADA.[19] Because the issue had not been properly presented in the trial court or court of

---

[19] The Supreme Court's opinion did include a single paragraph explaining nothing in the text or legislative history of Civil Code section 55 indicated a fee recovery under that

24

appeal, the Court declined to consider the markedly different question whether any state legislative objectives would be impaired by an award of fees for work on overlapping state law claims when the California Legislature had expressly limited or precluded defense fees for some of those claims. (*Jankey v. Lee, supra*, 55 Cal.4th at p. 1056, fn. 16.) That was the issue presented in *Turner, supra*, 193 Cal.App.4th 1047, in which the appellate court held a trial court is not required to award attorney fees to a prevailing defendant under the bilateral prevailing party provision in Civil Code section 55 for attorney hours inextricably intertwined with the hours incurred in defending claims under Civil Code sections 52 and 54.3: "When the Legislature enacted the unilateral, 'prevailing plaintiff' fee-shifting provisions in sections 52 and 54.3, it created an exception to section 55 by implication, prohibiting a fee award to a prevailing defendant for the same hours devoted to defending claims under sections 52 and 54.3." (*Turner*, at p. 1054.)

For the reasons discussed above, we follow the path marked in *Turner* by our colleagues in Division Five of the First Appellate District: Government Code section 12965, subdivision (b)'s exception to the mandatory award of litigation costs under section 1032, subdivision (b), implements a clear legislative goal of encouraging potentially meritorious FEHA suits. (*Williams, supra*, 61 Cal.4th at p. 112.) Although section 1032, subdivision (b), also serves an important purpose, relieving a party whose position was vindicated in court of the basic costs of litigation, when those costs have not been increased by the inclusion of additional theories of liability to the primary FEHA claim asserted, the express public policy of Government Code section 12965, subdivision (b), controls.[20] Unless the FEHA claim was frivolous, only those costs properly allocated to non-FEHA claims may be recovered by the prevailing defendant.

_____

provision should be limited as a matter of state law based on the overlap with federal remedies. (*Jankey v. Lee, supra*, 55 Cal.4th at p. 1056.)

[20] The same outcome may be reached by a somewhat different route: The so-called American rule is that each party to a lawsuit ordinarily bears his or her own attorney fees.

c. *The trial court has discretion to consider the financial circumstances of the losing plaintiff in determining reasonable costs*

The Romans also contend the trial court abused its discretion in awarding the full amount of costs sought by BRE notwithstanding Mr. Roman's indigency. We agree with the Romans that the trial court has discretion to deny or reduce a cost award to a prevailing FEHA defendant when a large award would impose undue hardship on the plaintiff—the financial circumstances of the losing plaintiff and the impact of the award on that party are relevant circumstances in determining whether the costs to be awarded are "reasonable in amount" within the meaning of Government Code section 12965, subdivision (b), and section 1033.5, subdivision (c)(3).[21] (See *Holman v. Altana Pharma U.S., Inc.* (2010) 186 Cal.App.4th 262, 283-285 [citing *Christiansburg* standard and holding expert witness fees awarded to prevailing FEHA defendant under section 998 may be "scaled" to the parties' relative financial resources]; *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1561-1562 [same]; see also *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 476-477 [in determining the amount of attorney fees to be awarded

---

(See, e.g., *Trope v. Katz* (1995) 11 Cal.4th 274, 278.) When a fee shifting statute alters that general rule as to some but not all causes of action at issue in a lawsuit, the provision calling for the exception to the general rule (the award of attorney fees to the prevailing party) applies not only to the causes of action for which attorney fees are permitted but also to any other cause of action that is intertwined with and inseparable from those claims. (*Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d at pp. 129-130 ["[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed"].) Here, the general rule pursuant to section 1032, subdivision (b), is that ordinary litigation costs are recoverable by the prevailing party. Government Code section 12965, subdivision (b), creates an exception to that rule for FEHA cases, allowing a prevailing defendant to recover costs only upon a showing the lawsuit was objectively groundless. By a parity of reasoning to the cases regarding allocation of attorney fees, that provision establishing an exception to the general rule for an award of costs should apply to any other cause of action that is intertwined and inseparable with the FEHA claims.

[21] Section 1033.5, subdivision (c), provides, "Any award of costs shall be subject to the following: [¶] . . . [¶] (3) Allowable costs shall be reasonable in amount."

26

to the prevailing party when the statute requires that the fee be reasonable requires consideration of the financial circumstances of the losing party].)  Indeed, although the Supreme Court in *Williams, supra*, 61 Cal.4th at p. 97, disapproved the holding of *Knight v. Unified School Dist., supra*, 132 Cal.App.4th 121, rejecting application of the *Christiansburg* standard to the award of costs to a prevailing FEHA defendant, it nonetheless cited with approval the *Knight* court's observation that equitable considerations may warrant the denial or reduction in amount of a cost award to the prevailing FEHA defendant.  (See *Williams,* at pp. 113-114, citing *Knight*, at pp. 135-136.)[22]

In this case, however, the cost award was against the Romans jointly, not solely against Mr. Roman.  Such a joint award against multiple plaintiffs who sued jointly on the same liability theories is proper.  (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 315.)  "'The reason is that in most cases where a defendant is entitled to costs as of right because plaintiffs took nothing in their joint action, there will be nothing to apportion.  The costs are joint and several because the plaintiffs joined together (represented by the same attorney) in a single theory of liability against a defendant who prevailed.'"  (*Ibid*.; accord, *Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1376.)  In rejecting the Romans' hardship claim as a ground for striking the cost bill, the trial court emphasized that no evidence had been presented that Ms. Roman was indigent or, in light of her recovery of more than $42,000 in a settlement of claims in this litigation against the company BRE had hired to handle customer calls, that requiring her to pay the cost award would be unjust or create an undue financial burden.

[22]    In explaining why consideration of financial burden and other equitable factors was not an adequate substitute for the *Christiansburg* standard in protecting a potential FEHA plaintiff's right of access to the courts, the Supreme Court explained, "[T]he theoretical possibility of later obtaining a reduction of costs is at best an imperfect assurance to the employee contemplating a FEHA action."  (*Williams, supra*, 61 Cal.4th at p. 114.)

On this record the trial court's ruling was not an abuse of discretion.  However, because we reverse the cost award and remand for reconsideration in light of *Williams*, the Romans should be permitted to introduce additional evidence regarding financial hardship when the matter is again presented to the trial court.

## DISPOSITION

The judgment on the merits in favor of BRE is affirmed.  The postjudgment order awarding costs is reversed and the cause remanded for further proceedings not inconsistent with this opinion.  The parties are to bear their own costs on appeal.


PERLUSS, P. J.

We concur:


ZELON, J.


STROBEL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.