Filed 1/13/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TRANSPORT INSURANCE COMPANY, | B249470 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC425704) |
| v. | Jane L. Johnson, Judge. |
| SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| R.R. Street & Co., Inc. et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Jane L. Johnson, Judge. Petition granted in part.

Selman Breitman, Ilya A. Kosten, Richard D. Bremer; Robie & Matthai, Edith R. Matthai, David J. Weinman, and Natalie A. Kouyoumdjian for Petitioner.

No appearance for Respondent.

Dickstein Shapiro, Kirk A. Pasich, Michael S. Gehrt for Real Party in Interest R.R. Street & Co., Inc.

McCurdy & Fuller, Mary P. McCurdy, David C. Hungerford for Real Party in Interest National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

---

[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of DISCUSSION, part II.

## INTRODUCTION

We hold that for purposes of determining whether an additional insured to an excess and umbrella general liability insurance policy is entitled to a defense by the insurer, the reasonable expectations of the additional insured may be different than the reasonable expectations of the named insured. Thus, we vacate the order granting summary adjudication in favor of the insured.

## BACKGROUND

### A. The 1981 Excess and Umbrella Insurance Policy Transport Issued to Vulcan

Petitioner Transport Insurance Company (Transport) issued to Vulcan Materials Company (Vulcan)[1] a commercial excess and umbrella liability insurance policy (policy number XGL-731-81-1), for the period January 1, 1981, to January 1, 1982 (Transport Policy). Endorsement No. 40 to the Transport Policy named R.R. Street & Co., Inc. (Street) as an additional insured with respect to its distribution or sale of Perchloroethylene (PCE), a solvent used in the dry cleaning industry.

The insuring provision of the Transport Policy stated:

"Coverage A—Personal Injury Liability

"Coverage B—Property Damage Liability

"Coverage C—Advertising Liability

"The Company will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of

"A.    personal injury or

"B.    property damage or

"C.    advertising injury

"to which this insurance applies, caused by an occurrence, and

---

[1]    For reasons unclear from the record before us, the parties refer to Vulcan as Vulcan Materials Corporation rather than Vulcan Materials Company.

"(1)  With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or

"(2)  If limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy

"The Company will

"(a)  have the right and duty to defend any suit against the insured seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient; but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the Company's limit of liability has been exhausted by payment of judgments or settlements."

The Transport Policy's Schedule of Underlying Insurance, Schedule A, identified nine insurance policies issued to Vulcan, including three Aetna Insurance Company policies for automobile and general liability.  Street was not an insured under any of the Aetna Insurance Company policies.

## B.    The Underlying Actions

Vulcan and Street were named as defendants in actions entitled *City of Modesto Redevelopment Agency, et al. v. Dow Chemical Company, et al.* (San Francisco County Superior Court Case No. 999345), *City of Modesto, et al. v. Dow Chemical Company, et al.* (San Francisco County Superior Court Case No. 999643), and *City of Modesto, et al. v. Dow Chemical Company, et al.* (Contra Costa County Superior Court Case No. MSC06-01019) (collectively, the Underlying Actions).[2]  The plaintiffs in the Underlying

---

[2]    According to Transport's complaint, Street also was named as a defendant in actions entitled *Estate of Garcia v. The Dow Chemical Co., et al.* (Stanislaus County Superior Court Case No. 611655), *United States of America v. Lyon, et al.* (United States District Court, Eastern District of California, Case No. 1:07-cv-00491-LJO-GSA), *Team*

Actions alleged that Vulcan manufactured, distributed, and sold PCE, and that Street distributed or sold or both distributed and sold to dry cleaners in Modesto PCE manufactured by Vulcan. The plaintiffs in those actions further alleged that PCE was released into the soil and groundwater and sought recovery for, inter alia, property damage caused by the resulting environmental contamination. National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) provided a defense to Street in the Underlying Actions pursuant to the National Union general liability policies in effect from December 31, 1986, through October 1, 1990.

**C.** *Legacy Vulcan*

In *Legacy Vulcan Corp. v. Superior Court* (2010) 185 Cal.App.4th 677 (*Legacy Vulcan*),[3] Transport brought a declaratory relief action concerning its and Vulcan's rights and obligations under the Transport Policy. (*Id.* at p. 685.) Vulcan and Transport submitted to the trial court three stipulated legal questions that concerned the scope of Transport's duty to defend Vulcan under the Transport Policy. (*Id.* at pp. 681, 685.) As relevant here, one of the questions concerned the meaning of the phrase "underlying insurance" as used in the provision that established a duty to defend with respect to umbrella coverage under the policy. (*Id.* at p. 685.) The trial court ruled that because the Transport Policy "did not expressly define the term 'underlying insurance' to include only those policies listed in schedule A, that term should be interpreted to include all primary policies in effect at any time during the period of a continuous loss." (*Id.* at pp. 686-687.) Vulcan filed a petition for writ of mandate challenging the trial court's order, and the Court of Appeal issued an order to show cause. (*Id.* at p. 687.)

*Enterprises, LLC v. Western Investment Real Estate Trust* (United States District Court, Eastern District of California, Case No. 1:08-cv-00872-LJO-SMS), and *California Water Service Co. v. The Dow Chemical Co., et al.* (San Mateo County Superior Court Case No. 473093). Although Transport's complaint sought a declaration that it did not owe Street a defense in these actions, Street and National Union's motion for summary adjudication concerned only the duty to defend in the Underlying Actions.

[3] Legacy Vulcan Corporation was formerly known as Vulcan Materials Company.

In its writ petition, Vulcan contended that the term "underlying insurance" included only the policies listed in Schedule A, rather than all primary policies in effect during the period of a continuous loss. (*Legacy Vulcan, supra,* 185 Cal.App.4th at p. 688.) The Court of Appeal noted that insurance policies are interpreted using the same rules of interpretation applicable to other contracts, the terms of an insurance policy are ambiguous if susceptible of more than one reasonable interpretation, and that any "'[a]mbiguity must be resolved in a manner consistent with the objectively reasonable expectations of the insured in light of the nature and kind of risks covered by the policy.'" (*Legacy Vulcan, supra,* 185 Cal.App.4th at p. 688.) The court also pointed out that the interpretation of a policy is a judicial function unless the interpretation turns on the credibility of extrinsic evidence. (*Ibid.*)

The Court of Appeal held that the term "underlying insurance" was ambiguous as it was used in the provision establishing a duty to defend with respect to umbrella coverage.[4] (*Legacy Vulcan, supra,* 185 Cal.App.4th at pp. 682, 688, 690.) That is, because the term "underlying insurance" was an expressly-qualified term under other provisions in the policy,[5] but not with respect to umbrella coverage, "the term 'underlying insurance' as used in the policy should be considered a generic term that, absent an explicit qualification, is neither limited to the underlying insurance listed in Schedule A nor encompasses all underlying insurance. This creates an ambiguity as to the meaning of the unqualified term 'underlying insurance.'" (*Id.* at p. 690.)

The Court of Appeal stressed that insurance policy ambiguities are resolved "in favor of the objectively reasonable expectations of the insured" (*Legacy Vulcan, supra,* 185 Cal.App.4th. at p. 691), and that absent extrinsic evidence to the contrary, the

---

[4]    Clause (1) in the language from the Transport Policy quoted above.

[5]    "[C]lause (a) of the 'retained limit' provision referred more explicitly to 'the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured,' and clause (b) of that provision qualified its reference to 'the underlying insurance' by limiting it to the policies 'listed in Schedule A.'" (*Legacy Vulcan, supra,* 185 Cal.App.4th at p. 690.)

ambiguous term had to be interpreted in Vulcan's favor to encompass only the underlying policies described in Schedule A of the Transport Policy, rather than to all of the collectible primary insurance available to Vulcan (*id.* at pp. 685, 691). The court noted that the parties, in connection with their submission of the three stipulated legal questions, did not present extrinsic evidence to assist in interpreting the Transport Policy's language and neither expressly waived nor reserved the right to present such evidence in further proceedings in the trial court. (*Id.* at p. 691, fn. 7.) The court stated that in further trial court proceedings, the trial court was to consider whether the parties waived or preserved the right to present extrinsic evidence in interpreting the policy, and if it decided to consider such evidence, it was to interpret the Transport Policy in light of that evidence. (*Ibid.*) The court did not decide the ultimate issue of whether Transport had a duty to defend under the Transport Policy.

### D.    The Summary Adjudication Motion

Transport brought a declaratory relief action against real parties in interest Street and National Union seeking a declaration, inter alia, that Transport did not have a duty to defend Street in certain actions under an insurance policy issued to Vulcan that named Street as an additional insured. Street ultimately filed a first amended cross-complaint against Transport seeking a declaration that Transport had a duty to defend Street in some of the actions identified in Transport's complaint as well as in other actions. National Union also filed a cross-complaint against Street for reimbursement and contribution, presumably concerning defense fees and costs expended on Street's behalf in certain of the underlying actions, and for a declaration that Transport had a duty to defend and/or indemnify Street in certain underlying actions.[6]

Street and National Union brought a motion for summary adjudication concerning Transport's duty to defend three of the actions identified in Transport's complaint. Street

---

[6]    National Union's cross-complaint is not in the record before us. The description of that pleading is taken from Transport's petition for writ of mandate and other documents in the record.

6

and National Union argued that the court in the separate and related action of *Legacy Vulcan, supra,* 185 Cal.App.4th 667, considered the scope of Transport's duty to defend the Underlying Actions, and held that the umbrella portion of the Transport Policy provided primary coverage for claims that were potentially covered under the Transport Policy and were not within the terms of coverage of the underlying insurance specifically identified in Schedule A of the Transport Policy. They contended that Transport, real party in interest in *Legacy Vulcan*, was collaterally estopped from contending in this action that "the term 'underlying insurance' in clause (1) refers to anything other than the policies listed in Schedule A." Accordingly, Street and National Union argued that the claims in the Underlying Actions were potentially covered by the Transport Policy. They contended the Schedule A underlying insurance did not provide coverage for those actions as Street was not an insured under any of those policies. Thus, the umbrella portion of the Transport Policy provided primary coverage for Street for the Underlying Actions and required Transport to provide a defense.

The respondent trial court granted the summary adjudication motion, apparently ruling, inter alia, that Transport was collaterally estopped by the decision in *Legacy Vulcan, supra,* 185 Cal.App.4th 667 from arguing that the term "underlying insurance" referred to insurance other than the policies listed on Schedule A.[7] The trial court denied Transport's request to continue the hearing on the summary adjudication motion so that it could conduct discovery relevant to the interpretation of the term "underlying insurance," which discovery Transport claimed was necessary to oppose the motion. Transport petitioned this court for a writ of mandate directing the trial court to vacate its order granting Street and National Union's summary adjudication motion and to enter an order denying the summary adjudication motion and permitting Transport to conduct discovery relevant to the interpretation of the term "underlying insurance." We issued an order to show cause why the petition should not be granted. We review legal issues and the summary adjudication de novo. (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37

---

[7]     The trial court's analysis is reflected in its tentative decision.

7

Cal.4th 377, 390; *Federal Ins. Co. v. Steadfast Ins. Co.* (2012) 209 Cal.App.4th 668, 679.) After argument, we grant the petition in part and issue a peremptory writ of mandate directing the trial court to vacate its order granting Street and National Union's motion for summary adjudication and enter a new and different order denying that motion.

## DISCUSSION

**A. The Trial Court Erred When It Relied on Vulcan's Objectively Reasonable Expectations of Coverage Rather than on Street's Objectively Reasonable Expectations of Coverage in Interpreting the Term "Underlying Insurance" with Respect to Umbrella Coverage**

Transport contends that the trial court erred in relying on the holding in *Legacy Vulcan, supra,* 185 Cal.App.4th 677 that the term "underlying insurance" with respect to umbrella coverage encompassed only the underlying policies described in Schedule A of the Transport Policy. (*Id.* at pp. 685, 691.) The *Legacy Vulcan* holding, Transport argues, was based on Vulcan's objectively reasonable expectations of coverage because Vulcan was the insured whose coverage was at issue. Here, Transport argues, the trial court should have considered Street's reasonable expectations of coverage in interpreting the term "underlying insurance" in the umbrella clause because it is Street's coverage that is at issue. Accordingly, Transport argues, the trial court erred in ruling that Transport had a duty to defend Street in the Underlying Actions. Street and National Union argue that the trial court properly ruled that it was bound by the doctrine of collateral estoppel to follow the *Legacy Vulcan's* interpretation of the term "underlying insurance."

The Supreme Court has said, "Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it

8

must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements. [Citation.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. omitted.) When a party uses collateral estoppel offensively—i.e., against a party who has litigated and lost the issue to another party in a separate proceeding, we review the application of collateral estoppel de novo. (*Smith v. ExxonMobil Oil Corp.* (2007) 153 Cal.App.4th 1407, 1414-1415.)

Transport assumes for purposes of its writ petition, but does not concede, that the term "underlying insurance" is ambiguous as to Street. We resolve ambiguities in an insurance policy in a manner consistent with the objectively reasonable expectations of the "party claiming coverage." (*St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.* (2002) 101 Cal.App.4th 1038, 1058 (*American Dynasty*).) When the party claiming coverage is an additional insured, it is the additional insured's objectively reasonable expectations of coverage that are relevant, and not the objectively reasonable expectations of the named insured. (*Ibid.*; *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1245, fn. 5 (*Frontier Pacific*); see *Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1361; see *BP A.C. Corp. v. One Beacon Ins. Group* (2007) 840 N.Y.S.2d 302, 307; but see *Merced County Mut. Fire Ins. Co. v. State of California* (1991) 233 Cal.App.3d 765, 775 [in dicta, the court stated "An additional insured added by endorsement is a third party beneficiary of the insurance contract between [the insurer] (promisor) and [the insured] (promisee). As such, the third party beneficiaries' rights are derivative. [Citation.]"].)

The California Supreme Court in *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436 (*Garcia*) said in dicta that the rights, if any, of a doctor as a third party beneficiary under an insurance policy were "predicated upon the contracting parties' intent to benefit him." (See Cornblum, California Insurance Law Dictionary and Desk

9

Reference (2013) § A 19:01.)[8] But *Garcia, supra,* 36 Cal.3d 426 involved an unnamed third party beneficiary, rather than, as here, a named additional insured. As one authority has written, "The status of the additional named insured is unique . . . because of several significant differences between its situation and that of the standard third party beneficiary. For example, a classic issue is whether the third party has a right to enforce the contract against the promisor. This depends on whether the promisee intended to benefit the third party. In an additional named insured controversy, however, there is no question that the named insured (promisee) intends to benefit the additional named insured (third party beneficiary) by contracting with the insurer (promisor); the concern is solely with the construction of the contract itself. In addition, in the usual case there is no evidence of the promisee's intent regarding the rights of the beneficiary except for the contract between the promisor and the promisee. An additional named insured, however, expressly bargains with the named insured for the benefit of coverage; the agreement to procure thus provides evidence of the named insured's intentions and purposes outside of the contract with the insurer. Finally, unlike situations involving a standard third party beneficiary, the special rules applicable to insurance contracts must be considered." (Pomerantz, *Recognizing the Unique Status of Additional Named Insureds* (1984) 53 Fordham L.Rev. 117, 125 (fns. omitted).) That authority went on, "[t]he intent of the insureds is reflected by the language of, and the circumstances surrounding, the agreement to procure. Despite the fact that the additional named insured is not a party to the insurance contract, his intent is relevant to the construction of that contract because the intent of the named insured in requesting the added coverage is directly dependent on the bargain that the additional named insured made with the named insured." (*Id.* at p. 129.) We agree with this analysis.

---

[8]    Even if one only looks at the reasonable expectations of the named insured, the expectation would be as to the additional insured—not as to the named insured's expectation as to itself. (Richmond, *Expanding Liability Coverage: Insured Contracts and Additional Insureds* (1996) 44 Drake L.Rev. 781.)

It is arguable that Street would not expect the Transport excess and umbrella policy to move into first position ahead of Street's own commercial liability policies. Transport in its petition does not, however, request that we determine Street's objectively reasonable expectations of coverage. Rather, it requests that we grant a writ of mandate compelling respondent trial court to set aside its order granting summary adjudication and to issue a new order denying summary adjudication.

Street and National Union's summary adjudication motion concerned Transport's duty to defend Street in the Underlying Actions as an additional insured under the Transport Policy. Street, an additional insured, and not Vulcan, a named insured, was the party claiming coverage. Thus, the trial court erred when it failed to consider Street's objectively reasonable expectations of coverage and, instead, relied on Vulcan's objectively reasonable expectations of coverage. (*American Dynasty, supra,* 101 Cal.App.4th at p. 1058; *Frontier Pacific, supra,* 111 Cal.App.4th at p. 1245, fn. 5.) Because the relevant inquiry in this case was Street's and not Vulcan's objectively reasonable expectations of coverage, a matter not litigated in *Legacy Vulcan, supra,* 185 Cal.App.4th 677, the trial court was not bound by collateral estoppel to rely on Vulcan's objectively reasonable expectations as found by the Court of Appeal in *Legacy Vulcan.* (*Lucido v. Superior Court,* 51 Cal.3d at p. 341.) Because the trial court erred, the summary adjudication in favor of Street and National Union is vacated.

## B.     Transport's Request for a Continuance to Conduct Discovery

Transport contends that the trial court erred in denying its request, pursuant to Code of Civil Procedure section 437c, subdivision (h), for a continuance of the hearing on Street and National Union's motion for summary adjudication to obtain discovery concerning Street's objectively reasonable expectations of coverage under the Transport Policy. We need not consider this claim because we grant Transport's request that we direct the trial court to vacate its order granting summary adjudication and to enter an order denying the summary adjudication motion.

11

## DISPOSITION

The petition is granted in part and a peremptory writ of mandate hereby issues directing the trial court to vacate its order granting Street and National Union's motion for summary adjudication and enter a new and different order denying that motion. Transport is awarded its costs in this writ proceeding.

**CERTIFIED FOR PARTIAL PUBLICATION**


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.