Filed 9/22/16 Metoyer v. Los Angeles Unified School Dist CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAUL METOYER, | B259458 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC436140) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge. Affirmed in part; reversed in part and remanded.

Law Offices of Jeffrey C. McIntyre and Jeffrey Curran McIntyre for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendant and Respondent.

\* \* \* \* \* \*

Paul Metoyer appeals from the judgment for defendant Los Angeles Unified School District (the District) in this employment discrimination and retaliation case, which the court entered after a jury trial. Metoyer contends collateral estoppel precluded the District from making a number of arguments at trial, based on the results of another plaintiff's case against the District. He also urges us to reverse the award of costs to the District based on relatively recent California Supreme Court authority. We reject Metoyer's collateral estoppel argument but hold the trial court should reconsider the costs award. We therefore reverse the portion of the judgment awarding costs to the District and remand for further proceedings, but affirm the judgment in all other respects.

## FACTS AND PROCEDURE

### 1. *Operative Complaint*

Metoyer's second amended complaint (SAC) alleged causes of action against the District under the Fair Employment and Housing Act, Government Code section 12940 et seq. (FEHA), for discrimination, harassment, and retaliation. Metoyer also alleged causes of action for violations of the Education Code, the Labor Code, and the Tom Bane Civil Rights Act (Bane Act) (Civ. Code, § 52.1 et seq.). He alleged he suffered discrimination and harassment based on his race—he is African-American—and his association with other African-American employees (associational discrimination). He also alleged the District retaliated against him for filing an earlier discrimination suit against it, testifying or assisting in coworkers' actions or complaints against the District, and otherwise complaining about discrimination and harassment he suffered.

### 2. *The* Balogun *Action*

In 2011, the District filed a notice seeking to relate this matter to another matter against the District filed by Waheed Balogun (*Balogun v. Los Angeles Unified School District* (Super. Ct. L.A. County, 2012, No. BC445040) (*Balogun* action)). The court

refused the request to relate the two matters, finding the two matters were not related within the meaning of Superior Court of Los Angeles County, Local Rules, former rule 7.3(f).[1]

The attorney who represents Metoyer also represented Balogun in his action against the District. Balogun is also African-American. His first amended complaint alleged causes of action for discrimination based on race, national origin, and association with African-Americans, failure to prevent discrimination, and retaliation, all under FEHA.

Metoyer and Balogun were both regional project management directors, or RPMD's, for the District. The District terminated all eight RPMD's, including Metoyer and Balogun, at the same time. The *Balogun* action went to trial first in March 2012. Balogun's theory of the case was that the District laid off all the RPMD's and eliminated the position to get rid of him and Metoyer specifically, because they had previously sued the District and assisted other African-American employees who had filed discrimination cases against the District. The District contended that it eliminated the RPMD position for a legitimate, nondiscriminatory reason—that is, restructuring and consolidation based on financial concerns.

Balogun's jury returned a special verdict form with mixed results. When asked whether the District refused to transfer Balogun and/or eliminated his position, the jury answered, "Yes." When asked whether Balogun's race or national origin was "a motivating reason" for the refusal to transfer and/or elimination of his position, the jury responded, "No." But when asked whether Balogun's "association with another black person or

---

[1] Superior Court of Los Angeles County, Local Rules, former rule 7.3(f) provided: "'A civil case may be ordered related to other case(s), including Probate and Domestic (Family Law) cases, by the court when it appears that the cases: [¶] a) Arise from the same or substantially identical transactions, happenings or events; or [¶] b) Require a determination of the same or substantially identical questions of law and/or fact; or [¶] c) Are likely for other good reasons to require substantial duplication of labor if heard by different judges. [¶] d) Are the same or substantially similar to a prior case in the Superior Court that has been dismissed, either with or without prejudice.'" (*Bravo v. Superior Court* (2007) 149 Cal.App.4th 1489, 1492, fn. 2.)

3

persons [was] a motivating reason" for the District's action, the jury answered, "Yes." The jury also answered "[y]es" when asked whether Balogun's filing his prior discrimination suit against the District or assisting other employees with their discrimination suits was "a motivating reason" for the District's action. Finally, the jury found the District failed to take reasonable steps to prevent discrimination and/or retaliation against Balogun. Accordingly, Balogun prevailed on his causes of action for associational discrimination, retaliation, and failure to prevent discrimination or retaliation, but not on his causes of action for racial and national origin discrimination. The jury awarded Balogun $211,765 in economic damages.

The District appealed the judgment for Balogun, arguing insufficient evidence supported the judgment, evidentiary error in admitting a certain performance evaluation, and a failure to mitigate damages. Division Five of this court found no errors and affirmed. Among other things, Division Five rejected the District's argument that Balogun had not refuted the evidence of a legitimate reduction in force based on nondiscriminatory financial reasons. The court discussed the substantial evidence that the District "implemented its fiscally necessary reduction in force in a discriminatory fashion," including testimony that two decisionmakers said they would have kept *some* RPMD's, but instead they chose to eliminate all of them because seniority rules would require them to retain RPMD's "causing . . . problems." The court noted that Balogun and Metoyer were two of the three most senior RPMD's, both were African-American, both had filed a discrimination suit against the District, both had assisted other African-American employees in their discrimination suits, and there was no evidence either had performance issues. Division Five also rejected the District's argument that there was no evidence the relevant decisionmaker at the District knew of protected activity by Balogun, holding instead that substantial evidence showed decisionmakers knew of Balogun and Metoyer's prior suit and knew that Balogun was a witness for other plaintiffs in their suits. (*Balogun v. Los Angeles Unified School Dist.* (Feb. 11, 2014, B243168) [nonpub. opn.].)

4

### 3. *Metoyer's Motion in Limine to Determine the Collateral Estoppel Effect of the* **Balogun** *Action*

Based on the asserted collateral estoppel effect of the *Balogun* action, Metoyer filed a motion in limine to preclude defenses by the District in this case. More specifically, the motion sought orders precluding the following types of evidence and argument: (1) that the District had a legitimate reason for eliminating the RPMD position, and that its reason for eliminating the position was not a pretext; (2) that decisionmakers were unaware of protected activity under FEHA by Balogun and Metoyer; (3) that the District did not eliminate the RPMD position because of associational discrimination or retaliation against Balogun; (4) that the District took reasonable steps to prevent discrimination against Metoyer and Balogun; and (5) generally contesting that the District was liable for associational discrimination, retaliation, and failure to prevent discrimination or retaliation for eliminating the RPMD position, resulting in Metoyer's termination. Metoyer argued these issues had been conclusively determined by the *Balogun* action, and the District could not relitigate them.

Metoyer proposed special jury instructions as part of his motion in limine. The proposed instructions told the jury it had to accept as conclusively established and true that the District did not have a legitimate reason for eliminating the RPMD position and terminating Metoyer, and that the individuals responsible for terminating Metoyer were aware he and Balogun had filed discrimination suits against the District and had assisted other employees in their discrimination suits. The proposed instructions also directed the jury to find that Metoyer's association with other African-Americans "was a substantial motivating reason" for eliminating his position, to find his participation in a prior discrimination suit or assisting other employees in their discrimination suits "was a substantial motivating reason" for the elimination of his position, and to find that the District failed to take reasonable steps to prevent the foregoing discrimination and retaliation.

The District opposed the motion in limine, arguing the jury in the *Balogun* action was not asked to decide whether the District discriminated or retaliated against *Metoyer*.

5

Moreover, it argued, the jury in the *Balogun* action "was not given the question whether the District did not have legitimate financial reasons for eliminating the RPMD position." The court denied Metoyer's motion in limine.

### 4. Trial on Metoyer's SAC

Trial by jury commenced in June 2014. Metoyer does not challenge the sufficiency of the evidence supporting the judgment (only the court's denial of his motion in limine). Accordingly, we provide a relatively brief summary of the evidence.

Metoyer began working for the District in 2001 as an RPMD. He was one of the first RPMD's hired at the District. He oversaw construction projects in a region consisting of approximately 110 schools. Around 2003, Metoyer applied for but did not receive a promotion. He appealed that decision twice and, through that process, came to believe racial discrimination played a role in the promotion decision. After the District denied his appeals, he and Balogun brought a racial discrimination suit against the District in 2004, based on the promotion process. The parties resolved the case in 2007. The District continued to give Metoyer annual raises after he filed the prior suit in 2004.

Metoyer and Balogun were deposed around February 2008 in another discrimination suit brought by a separate group of African-American employees at the District. Metoyer and Balogun were also listed as trial witnesses in that case, but the parties resolved the case before trial, around September or October 2008.

In 2005, while the prior litigation with the District was ongoing, the District asked Metoyer to helm a new pilot project called the "Job Order Contracts" (JOC) project. The District implemented the JOC project to attract more minority and local small business contractors. The audits of the JOC project in 2006, 2007, and 2008 found no deficiencies. Shortly after the 2008 audit, in November 2008, the District removed and replaced Metoyer as director of the JOC project. The District moved him to a cubicle workspace at a different office building.

From the time he left the JOC project until his termination, Metoyer no longer had supervisory duties. His work consisted of preparing business plans for Americans with Disabilities Act projects and for projects pursuant to a new measure that gave the District

6

additional bond funding. He was told he was not needed at the regular RPMD meetings and so did not attend them.

Around 2008 through 2009, the funding for the facilities department and the projected work load were declining. The District planned a reorganization of the facilities department so that the existing facilities and new construction groups would be combined. The District planned a reduction in force, as there were many redundant positions between the existing facilities and new construction groups.

The RPMD's were part of the existing facilities group. There were eight regions over which the RPMD's presided. Generally, each RPMD was responsible for one region, except Metoyer and one other RPMD were no longer in the field by 2009. The reorganization plan called for combining the eight regions into three. Initially, three RPMD's were chosen to head up the three regions, including Balogun but not Metoyer. Later, the District decided to lay off all the RPMD's. Contract professionals who had previously been working in the regions as consultants would manage the three regions.

According to Terry Dillon, the District executive who managed the RPMD's, the decision to eliminate the RPMD position was based on financial concerns and had nothing to do with the RPMD's performance or whether they were good or bad employees. The budget director had set forth a goal of reducing personnel costs, and Dillon had to look at cutting around 200 employees from a group of approximately 350.

The consultants who would oversee the three newly constituted regions were intended to be an interim measure and a bridge to provide continuity of leadership until managers from the new construction group had transitioned and felt they did not need the help of the consultants anymore. The District could release the consultants on very short notice, whereas the District employees could be released only when the personnel commission enacted a reduction in force. This flexibility underlay the decision to use consultants rather than keep three District employees on as an interim measure.

Michael Brady was the deputy director of maintenance for the District in 2009. Brady had discussions with his boss, Neil Gamble (director of maintenance and operations), throughout early to mid-2009 regarding reorganization of the unit in which the RPMD's

7

served. Brady told Gamble he would have use for some RPMD's in his unit after the reorganization. Gamble explained all the RPMD's were going to be laid off, saying "they were a problem" and "there were performance issues." Brady indicated he thought it inappropriate to eliminate a whole class of employees when there was work available for at least some of the group. Gamble said contract employees would handle any such work. Gamble did not recall having any conversation with Brady about the RPMD's. Neither Brady nor Gamble oversaw the RPMD's.

Brady said he also talked to Dillon about the RPMD's in the summer of 2009. Brady asked Dillon whether Brady could use the RPMD's, as he thought he would have some work for them. Brady believed there would be work for some time for at least half the RPMD's. Dillon responded that he would like to retain some of the more junior RPMD's, but because some of the senior RPMD's "had problems" or "issues," the District was going to lay off all of them. This conversation occurred in a common area outside Metoyer's cubicle. Dillon pointed to Metoyer's cubicle and said, "like this person," when he referred to the senior RPMD's with problems. Brady informed Dillon that it was improper under the District policy to remove the District employees and replace them with consultants. At the same time, consultants could be used for short-term needs.

Dillon denied telling Brady that he would have kept some of the junior RPMD's but did not because the senior RPMD's had problems. He also denied saying that Metoyer specifically was problematic or a troublemaker. According to Dillon, Brady asked if he could use some of the RPMD's for a project, and Dillon simply responded, "I really don't think you really want him," and pointed to Metoyer's cubicle.

Dillon took the position overseeing the RPMD's in May or June 2009. In one of the first meetings he had with the RPMD's, he told them that it was likely the District was going to eliminate their positions, and he encouraged them all to look for new job opportunities. Later, when the District offered an early retirement incentive program, he encouraged them to seriously consider that as well.

In August 2009, Metoyer received notice that the District was restructuring the regions over which the RPMD's presided so that the eight regions would be combined into

three.  He received a letter in December 2009 informing him that the District was eliminating his position and terminating him as of January 30, 2010.  At the time, he was on leave with a back injury.  He was still on leave when his termination became effective.  The District used consultants until late 2010 to perform work that RPMD's had previously performed.

## 5.  *The Verdict for the District*

Among other things, the court instructed the jury that (1) Metoyer had to prove his race or his association with other African-Americans "was a substantial motivating reason" for an employment adverse action by the District (discrimination cause of action); and (2) his filing of an action for discrimination or his testifying on behalf of others who filed discrimination actions "was a substantial motivating reason" for an adverse employment action (retaliation cause of action).  The court defined a substantial motivating reason for the jury thusly:  "A substantial motivating reason is a reason that actually contributed to an adverse employment action.  It must be more than a remote or trivial reason.  It does not have to be the only reason motivating the adverse employment action."

The court further instructed that if the jury found discrimination or retaliation was a substantial motivating reason for Metoyer's discharge, then it "must consider [the District]'s stated reasons for the discharge and other employment actions."  If it found the reorganization and reduction in force also constituted a substantial motivating reason for his discharge, then it "must determine whether [the District] had proven that it would have discharged" Metoyer anyway based on the reorganization and reduction in force, even had it not also been substantially motivated by discrimination or retaliation.

The jury returned a special verdict form in which it found Metoyer's race or association with other African-Americans was not a substantial motivating reason for any adverse action by the District.  Moreover, the jury found Metoyer's participation in his or other employees' discrimination suits against the District was not a substantial motivating reason for any adverse action by the District.  It also found the District was not liable for harassment or failure to take reasonable steps to prevent discrimination, harassment, or retaliation.  The court entered judgment on the special verdict and amended the judgment to

add costs in favor of the District ($7,660.19), after the District filed its memorandum of costs. Metoyer timely appealed.

## DISCUSSION

### 1. Collateral Estoppel

Based on collateral estoppel, Metoyer contends the court should have precluded the District from offering evidence and argument that it laid off Metoyer and the other RPMD's as a result of restructuring and financial conditions. He further argues the court should have barred the District from contesting liability for associational discrimination, retaliation, and failure to prevent discrimination or retaliation as to Metoyer. Finally, he contends the court should have barred the District from arguing that its decisionmakers had no knowledge of Balogun's or Metoyer's protected activities. The doctrine of collateral estoppel does not compel us to reverse with respect to any of these issues.

Collateral estoppel gives conclusive effect to a determination of an issue in a former proceeding. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701-702.) The application of collateral estoppel is a question of law we review de novo. (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 179; *Transport Ins. Co. v. Superior Court* (2014) 222 Cal.App.4th 1216, 1224.)

"Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

There is no dispute that the District was a party to the *Balogun* action and that the decision in the *Balogun* action was final on the merits by the time this case went to trial.

10

We are concerned with whether there is an identity of issues actually litigated and necessarily decided.

"Precisely defining the issue previously decided and the one sought to be precluded is critical." (*Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1513.) "'[I]t must appear . . . that the precise question was raised *and* determined in the former suit.'" (*Eichler Homes, Inc. v. Anderson* (1970) 9 Cal.App.3d 224, 234, italics added.) An issue that was "'entirely unnecessary' to the judgment" in the prior litigation was not necessarily decided in the prior litigation. (*Lucido v. Superior Court, supra*, 51 Cal.3d at p. 342.) When "'the previous decision rests on a "different factual and legal foundation" than the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied.'" (*Johnson v. GlaxoSmithKline, Inc., supra*, at p. 1513.) Moreover, "there is no estoppel if upon the 'face of the record' anything is left to conjecture as to what was necessarily involved and decided . . . ." (*Talman v. Talman* (1964) 229 Cal.App.2d 39, 42; accord *Eichler Homes, Inc. v. Anderson, supra*, at p. 234.) Thus, when a jury could have reached its verdict for any number of reasons, and the jury's findings do not clarify the reasons for its verdict, the verdict is not preclusive on issues that the jury could have but did not necessarily decide. (*Harris v. Grimes* (2002) 104 Cal.App.4th 180, 187 [collateral estoppel did not bar plaintiff from litigating her negligence cause of action against a police officer when the jury in a prior federal action returned a verdict for the officer on plaintiff's civil rights cause of action; the federal "jury could have reached its verdict for any number of reasons other than finding the shooting was a reasonable use of force"].)

a. **The District's Reasons for Eliminating the RPMD Position**

Here, it is important to define the precise issues Metoyer contends the prior jury necessarily determined. As phrased by him, the first issue is whether the District "eliminated Metoyer's and the other RPMD positions for purportedly legitimate consolidation and financial reasons." According to Metoyer, the jury necessarily rejected that evidence and argument when it found the District liable to Balogun for associational discrimination, retaliation, and failure to prevent discrimination and retaliation. He urges

11

that the jury could not have found the District liable to Balogun if the jury had accepted its reorganization arguments.

But we cannot say Balogun's jury necessarily concluded the District had no legitimate financial reasons for eliminating Metoyer's and the other RPMD's positions. Balogun's jury did not make an express finding on the special verdict form that the District lacked a legitimate, nondiscriminatory reason for eliminating the RPMD position generally or terminating all RPMD's. What it found was that Balogun's association with other African-Americans and his protected activity were "motivating reason[s]" for the District's refusal to transfer him and/or the elimination of his position.

"While a complainant need not prove that racial animus was the sole motivation behind the challenged action, he must prove by a preponderance of the evidence that there was a 'causal connection' between the employee's protected status and the adverse employment decision." (*Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1319.) CACI former No. 2507, effective in March 2012 during Balogun's trial, defined "motivating reason" as follows: "A 'motivating reason' is a reason that contributed to the decision to take certain action, even though other reasons also may have contributed to the decision." This instruction was consistent with the case law holding that a plaintiff need not prove racial animus was the sole cause of the challenged adverse employment action. (E.g., *Mixon v. Fair Employment & Housing Com., supra*, at p. 1319.)

Accordingly, Balogun's jury may have concluded that while Balogun's association with other African-Americans and his protected activity motivated the District with respect to Balogun, the District *also* had other legitimate financial reasons for eliminating the RPMD position. The jury's verdict does not allow us to say it rejected all other reasons for eliminating the RPMD position, particularly as to RPMD's other than Balogun. In other words, the verdict did not necessarily decide the District had improper motives with respect to all the RPMD's. And if Balogun's jury believed that the District also had improper

12

motives with respect to *Metoyer*, that conclusion was entirely unnecessary to the verdict for Balogun.**2**

The order Metoyer sought in his motion in limine was, therefore, much too broad. He wanted the court to preclude evidence and argument "that there was a legitimate reason why [the District] eliminated the Regional Project Management Director (RPMD) positions, which resulted in the termination of plaintiff [Metoyer], and from disputing that the reasons [the District] has advanced for eliminating the RPMD positions are pretextual." But the verdict of Balogun's jury did not necessarily decide the District's reasons were pretextual as to anyone except Balogun. As Division Five recognized in the *Balogun* action, Balogun "did not contend that the District had no reason to cut *any* of the eight RPMD positions; rather, he acknowledged the District had a legitimate reason to reduce the number of RPMDs employed in the Facilities Branch." (*Balogun v. Los Angeles Unified School Dist., supra*, B243168, italics added.) He contended instead that those reasons were not legitimate with respect to him and were instead pretextual.

Balogun also appears to have offered evidence that the District's reasons were pretextual with respect to Metoyer because the evidence in their cases overlapped.**3** We can

---

**2** Metoyer contends the District forfeited the argument that the *Balogun* jury did not necessarily reject the District's legitimate financial reasons for eliminating the RPMD position. He argues the District failed to raise the argument below and in the *Balogun* action. A fair reading of the District's opposition to the motion in limine discloses that it did raise the argument. For instance, the District asserted "[t]he issues of whether [the District] was motivated by discriminatory and retaliatory animus toward ***all* RPMDs**, including [Metoyer], in its decision to eliminate the RPMD position were not decided in the *Balogun* matter." As for the *Balogun* action, Metoyer contends a forfeiture arises in this case because the District did not request the mixed motive instruction (BAJI No. 12.26), and it never asserted mixed motives—it argued simply that it had no wrongful motive whatsoever. Regardless of whether the District asserted a mixed motive defense in the *Balogun* action, the law defining "motivating reasons" allows for more than one motivating reason. This is where the ambiguity in the jury's verdict comes into play.

13

see from the recitation of facts in Division Five's opinion that much of Balogun's evidence related to Metoyer as well. For instance, Balogun offered the evidence that they both filed the earlier discrimination suit against the District and participated in other employees' discrimination suits, and that Brady had conversations with other executives in which they referred to "problems" with senior RPMD's. On the other hand, there was also evidence that did not relate to Metoyer, such as an "unwarranted negative performance evaluation which did not conform to the normal personnel practices of the organization and was placed in [Balogun]'s personnel file without his knowledge." (*Balogun v. Los Angeles Unified School Dist., supra*, B243168.) Whatever the overlap in evidence, however, Balogun's verdict form did not ask the jury to make conclusive determinations as to Metoyer.

Metoyer relies heavily on Division Five's opinion, in which it held that the jury "could reasonably infer" from Balogun's evidence that, although the District was required to lay off some RPMD's, Balogun *and Metoyer* were laid off because they were "trouble for management." (*Balogun v. Los Angeles Unified School Dist., supra*, B243168.) He asserts that Division Five's opinion was a conclusive determination on the issue of pretext as to Metoyer. This is unconvincing for at least two reasons. First, Division Five was reviewing the judgment for Balogun and affirmed that judgment. Any comments it made with respect to Metoyer were surplusage and therefore not entitled to preclusive effect. (*Pitts v. City of Sacramento* (2006) 138 Cal.App.4th 853, 858 [finding in prior litigation that employee had voluntarily separated from her employment was mere surplusage not essential to determination of the prior litigation, and finding did not have preclusive effect in her later action for reinstatement].) Second, Division Five was not the finder of fact in the *Balogun* action and conducted only a substantial evidence review. Plainly, whether there was substantial evidence to support the verdict is not the same standard of proof the jury had to apply in this case—whether there was proof by a preponderance of the evidence. (*Heard v.*

---

**3** The vast majority of the record in Balogun's trial is not before us. With the motion in limine, Metoyer submitted Balogun's first amended complaint, the completed special verdict form, the appellate briefs, and the Court of Appeal decision and remittitur.

14

*Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1749 [standard of proof for FEHA plaintiff's case is preponderance of the evidence].) "[C]ollateral estoppel does not apply when the factual finding in the prior proceeding was arrived at based on a lower standard of proof than the one required in the subsequent proceeding." (*The Grubb Co., Inc. v. Department of Real Estate* (2011) 194 Cal.App.4th 1494, 1503.)

**b.  Liability for Associational Discrimination, Retaliation, and Failure to Prevent Discrimination**

The next "issues" on which Metoyer seeks to apply collateral estoppel are "liability to Metoyer for his causes of action for association discrimination and retaliation under the FEHA with respect to Metoyer's layoff and the failure to prevent discrimination and retaliation." His motion in limine sought orders precluding the District from "contesting liability" for these causes of action based on the elimination of his position.

To begin with, as we discuss at length above, the jury's verdict in the *Balogun* action did not necessarily determine the District was liable to Metoyer for association discrimination, retaliation, and failure to prevent discrimination or retaliation. The jury found Balogun's association with other African-Americans and protected activity were motivating reasons for the adverse employment action against Balogun. The *Balogun* jury did not answer whether the District was motivated by the same reasons with respect to Metoyer. There was no reason for it to do so because Metoyer was not a plaintiff in the Balogun action.

Even assuming the prior jury necessarily determined the same "motivating reasons" applied to Metoyer, the jury in this case applied a different, higher standard of causation to Metoyer's causes of action. This is because after trial in the *Balogun* action but before trial here, our Supreme Court decided *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*). *Harris* held that FEHA's prohibition on discrimination "because of" a person's protected characteristic (Gov. Code, § 12940, subd. (a)) means a plaintiff must "show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor," in the adverse employment action. (*Harris, supra*, 56 Cal.4th at p. 232.) The court reasoned that this higher standard of causation "more effectively ensures that liability will

15

not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision.  At the same time . . . , proof that discrimination was a *substantial* factor in an employment decision triggers the deterrent purpose of the FEHA and thus exposes the employer to liability, even if other factors would have led the employer to make the same decision at the time." (*Ibid.*)  After *Harris*, the Judicial Council of California revised the CACI instructions for FEHA causes of action to replace "a motivating reason" with " a substantial motivating reason."  The council also revised the instruction defining a "motivating reason" to define a "substantial motivating reason." (*Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 479.)

These different standards of causation are not the same.  Accordingly, even if Balogun's jury determined the same motivating reasons applied to Metoyer, collateral estoppel would not apply because the jury arrived at the prior finding under a different, lower standard of causation. (*Harris v. Grimes, supra*, 104 Cal.App.4th at p. 187 [collateral estoppel did not apply when prior finding of "reasonable use of force" in civil rights case did not have the same meaning as "reasonable conduct" under negligence law in later case]; *Powers v. Floersheim* (1967) 256 Cal.App.2d 223, 230 [collateral estoppel is not applicable if there has been an intervening change in the law or a doctrinal change].)

Metoyer contends the District forfeited this argument that the different standards of causation defeat collateral estoppel.  First, he asserts the District did not raise this argument in its opposition to the motion in limine.  We do not see this as barring our consideration of the issue.  "[W]hen an appeal raises a question of law on undisputed facts, the issue has not been forfeited." (*Winchester Mystery House, LLC v. Global Asylum, Inc.* (2012) 210 Cal.App.4th 579, 594.)  Whether the two standards of causation differ is a question of law.  The question of fact—which standard Balogun's jury versus Metoyer's jury applied—is answered by the special verdict form of Balogun's jury, which is an undisputed piece of evidence.  Second, Metoyer contends forfeiture arises because *Harris* came down before the District filed its opening brief in the appeal from the *Balogun* judgment.  Thus, the District could have argued the *Balogun* court erred in instructing the jury on the pre-*Harris* standard of causation.  Because the District did not so argue, we should deem the Balogun jury to

have applied the higher "substantial motivating reason" standard of causation. We are not persuaded. Metoyer cites no authority applying forfeiture in this manner.

Even if we were persuaded, this would mean only that the *Balogun* jury should be deemed to have applied the "substantial motivating reason" standard to Balogun's claims, not Metoyer's. This leads us back to the more fundamental problem with Metoyer's argument that the court should have precluded the District from contesting liability for associational discrimination, retaliation, and failure to prevent discrimination or retaliation. He was not asking the trial court to give preclusive effect to mere "issues" but to entire causes of action determined in the *Balogun* action. As such, he was asserting claim preclusion, not issue preclusion. The two are separate aspects of the overarching doctrine of res judicata. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823.) "*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.'" (*Id.* at p. 824.) While one who was a stranger to the first suit may raise issue preclusion, claim preclusion requires the same parties, not to mention the same causes of action. Metoyer was not a party to the *Balogun* action, nor has he argued that he was in privity with Balogun. And because he was not a plaintiff, the jury did not render a verdict on his causes of action. He may not, therefore, assert claim preclusion to prevent the District from contesting liability for his causes of action.

## c. Knowledge of Protected Activity

Moving to the last collateral estoppel issue, Metoyer contends the court should have precluded the District from arguing that its decisionmakers had no knowledge of Balogun's or Metoyer's protected activities. We would agree that, as to Balogun, the jury in his case necessarily determined the decisionmakers had knowledge of his protected activity, when the jury found the protected activity was a motivating reason for the adverse employment action against him. But as to Metoyer, the *Balogun* jury made no such finding, and if it did, the finding would have been entirely unnecessary to the verdict.

Metoyer again relies on Division Five's opinion in the *Balogun* appeal, in which it noted that two District executives "acknowledged that they were aware of Metoyer's prior discrimination lawsuit, a suit in which Balogun was associated as a plaintiff." (*Balogun v.*

17

*Los Angeles Unified School Dist., supra*, B243168.) As we discuss above, this reliance is misplaced. Any comments Division Five made with respect to Metoyer were surplusage not entitled to preclusive effect, and moreover, Division Five was not the finder of fact in the matter. Division Five noted there was conflicting evidence on the issue, and the jury—the fact finder—was free to reject another executive's statement that he was unaware of Balogun's protected activities.

Assuming for the sake of argument that the court should have precluded the District from disputing the decisionmakers' knowledge of Metoyer's protected activity, Metoyer fails to show prejudice. Metoyer's jury had to determine whether Metoyer's protected activity substantially motivated the adverse employment action against him. Causation does not necessarily follow from knowledge. That is, the jury may have determined the decisionmakers knew of Metoyer's prior suit and his participation in others' suits, but still decided that the protected activity did not substantially motivate the District's decision to lay him off. Metoyer does not explain how it is reasonably probable he would have obtained a more favorable result, had the court granted his motion on this issue. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [error is prejudicial when it is reasonably probable a more favorable result would have been reached in the absence of the error].)

## 2. *Costs in Favor of the District*

The District filed a memorandum of costs and the court amended the judgment to award the District those costs. *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97 (*Williams*) was pending when the court awarded the District its costs. Metoyer argues we should reverse the award of costs and, at a minimum, remand for the trial court to reconsider costs in light of *Williams*. We agree.

In *Williams*, our Supreme Court held a prevailing FEHA defendant "should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Williams, supra*, 61 Cal.4th at p. 115.) The court determined FEHA (Gov. Code, § 12965, subd. (b)) gave the courts discretion to award costs under this standard, and moreover, FEHA

18

"expressly excepts FEHA actions from Code of Civil Procedure section 1032(b)'s mandate for a cost award to the prevailing party." (*Williams*, *supra*, 61 Cal.4th at p. 105.)

In *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040 (*Roman*), Division Seven of this court reversed a pre-*Williams* award of costs and remanded for reconsideration under *Williams*. The court determined that the required finding under *Williams* "should be addressed by the trial court in the first instance," unless the appellate court determines that the trial court cannot reasonably make the required finding for defense costs. (*Roman, supra*, at p. 1058.)

Like this case, *Roman* also involved both FEHA and non-FEHA causes of action. (*Roman, supra*, 237 Cal.App.4th at p. 1059.) The court held that if the pleading of non-FEHA causes of action led the defendant "to incur additional allowable costs (for example, the cost of taking a deposition not otherwise required to contest the FEHA claim)," the defendant was entitled to recover at least those apportioned costs as a matter of right under Code of Civil Procedure section 1032, subdivision (b). (*Roman, supra*, at p. 1059.) But as to costs incurred in defending intertwined and inseparable FEHA and non-FEHA claims, and which could not be apportioned between the overlapping FEHA and non-FEHA claims, the defendant could not recover those costs unless the court made the required finding under *Williams*. (*Roman, supra*, at pp. 1059-1060, 1062 ["Unless the FEHA claim was frivolous, only those costs properly allocated to non-FEHA claims may be recovered by the prevailing defendant."].) The trial court had to determine on remand whether there were any allowable costs incurred by the defendant that could be allocated solely to the non-FEHA causes of action. (*Roman, supra*, at p. 1059, fn. 18.)

We agree with the reasoning of *Roman* and follow its approach. Metoyer pleaded non-FEHA causes of action that remained in the case until trial. The District prevailed on the causes of action under the Bane Act and the Education Code by directed verdict. The jury found in favor of the District on the Labor Code cause of action.

We shall reverse that portion of the judgment awarding costs to the District, and on remand, the court should determine whether costs may be apportioned between the FEHA and non-FEHA causes of action. If the District incurred costs attributable solely to the non-

19

FEHA causes of action, the court may award them without the finding required by *Williams*. If the costs are not capable of apportionment, the court may award costs to the District only if it finds "the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Williams, supra*, 61 Cal.4th at p. 115.)[4]

**DISPOSITION**

The portion of the judgment awarding costs to the District is reversed. On remand, the court shall conduct further proceedings to reconsider the costs award, consistent with this opinion. In all other respects, the judgment is affirmed. Each party shall bear its own costs on appeal.

FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.

---

**4** The District asserts the Supreme Court decided *Williams* after the cost award, and Metoyer has not shown it should be applied to this case. On the contrary, Metoyer cited authority showing just this. Specifically, he cited *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 474, observing: "'[A] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.' [Citations.] This is why a judicial decision generally applies retroactively."