Filed 6/28/22 Williams v. Simpson Strong-Tie Co. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JAMES WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SIMPSON STRONG-TIE<br>COMPANY INC.,<br><br>    Defendant and Respondent. | A162992<br><br>(Alameda County<br>Super. Ct. No. RG19014788) |

James Williams appeals from a final judgment following summary adjudication in favor of Simpson Strong-Tie Company Inc. (Simpson) and the award of costs to Simpson. He contends the trial court erred by (1) granting summary adjudication in favor of Simpson on his retaliation claim under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and (2) awarding costs of $46,227.63 to Simpson after a jury verdict in its favor on the remaining defamation claim. We affirm the grant of summary adjudication and reverse, in part, the order awarding Simpson costs, and remand for further proceedings regarding the award of costs.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Williams's Employment at Simpson

In December 2017, Simpson hired Williams as a fabrication layout technician. Williams reported to the production department supervisor,

1

Chris Altomare. He worked in the production office with three other employees: Angel Mosqueda, a special products technician; Francisco Rendon, the production lead; and Norah Picardo. Each employee in the office had his or her own workstation with a computer that was accessed with a unique username and confidential password.

Prior to Simpson's hiring Williams as a fabrication layout technician, a Simpson supervisor, Damian Flores, asked Angel Mosqueda if he knew anyone who was qualified for the opening.[1] Mosqueda suggested a former coworker who ultimately did not apply for the position. Flores followed up with Mosqueda a few weeks later, and Mosqueda then suggested his brother. However, Mosqueda's brother was not looking for work at the time and was not even in the country. Mosqueda and Flores never had any further discussions about his brother applying for the position. Williams was ultimately hired for the position, with a probationary period through April 18, 2018.

On March 19, 2018, Dawn Standart, who was a human resources generalist at Simpson, retrieved an anonymous note from a locked box in a break room maintained for communications with human resources. The handwritten note stated: "I caught the new layout guy James Williams watching porn Saturday. I could see him through the window." On March 26, 2018, Standart retrieved a second anonymous handwritten note from the locked box, which said: "Fabrication department[:] On Tuesday I see the new layout guy James looking at porn on his computer trough window. I wish to remain unamed but you can check computer to see I right."

---

[1] These facts are relevant to Williams's retaliation claim, as discussed *post* in the opinion.

(*Sic.*)  Standart gave both notes to Valerie Jones, who was the human resources business partner.

On March 27, 2018, Williams reported to the production lead, Francisco Rendon, that browser tabs referencing pornography appeared when he opened his Web browser.  The browser tabs said " 'Porn' " and " 'XXX.' " Williams did not click on the tabs, but he could tell by the words that they referenced inappropriate content.  He found the references very offensive and disturbing, and they made him feel uncomfortable at work.  Williams told Rendon he did not know why they were there and asked Rendon to report the incident to information technology (IT).  Williams blocked the tabs and never again saw any other tabs suggesting inappropriate Web sites.

On the same day, Mosqueda, who shared an office with Williams, sent an e-mail to Standart stating:  "This is regarding an incident that occurred earlier today.  James Williams the new layout technician was approached about completing his LMS training.  When James opened up his web browser I overheard there were some inappropriate sites saved on his recent history. James called Francisco Rendon (who's now in charge of the Production Office) and tried to shift the blame on someone else.  Francisco didn't see anything just told him not to click on anything you're not supposed to.  I personally have never seen him look at anything inappropriate on his computer but IT department can find out for certain.  I would hate to see anyone get in trouble but if it's true, what he's doing is disrespectful to the other employees working in this office."  (*Sic.*)

On March 29, 2018, Mosqueda sent an e-mail to Valerie Jones in human resources, attaching three photographs of Williams's workstation with pornography on the computer screen.  The e-mail stated:  "Valerie,

3

[¶] Just wanted to share with you what I noticed on his computer yesterday and again today."

Williams completed his training on Simpson's IT and sexual harassment policies on April 4, 2018. Williams understood that Simpson's policies prohibited employees from accessing pornographic material at work and that the IT policy prohibited the sharing of passwords and required employees to lock their session or log off when leaving their computer. Williams did not share his password with anyone, but he sometimes did not log off of his computer when he left his office.

On April 9, 2018, Mosqueda e-mailed Jones, Anthony Cervantez, the plant superintendent, and Ali Syed, the plant manager, attaching 14 photographs showing Williams's workstation with pornography on the computer screen. The e-mail stated: "Its uncomfortable having to report this again but this is the third day I've have caught James Williams looking at inappropriate content at his work station since the last incident I reported. I know the pictures are a little blurry but they can be verified by checking his internet history and see that this has occurred on numerous occasions. I also have them saved on my phone if you need to verify the image metadata." (*Sic*.)

Jones requested that Tou Vue, a senior IT systems analyst, review Williams's browsing history. Vue remotely accessed Williams's computer and his cache of Internet cookies, which contain data on browsing history, including the date and time Web sites were accessed and the address of the Web sites. Within the cache, he observed "adult site information," and he copied these files and provided them to Jones on April 10, 2018. He explained to Jones that Williams's account had accessed these files.

4

After receiving Mosqueda's April 9 e-mail, Cervantez met with Mosqueda and told him that he " '[could not] really do anything' " with photos that did not show Williams in the frame. On April 13, 2018, Mosqueda e-mailed Cervantez and Jones, attaching three additional photos. Mosqueda's e-mail stated: "Tony, [¶] Here's the angle you said would be more decisive. I was just going to leave this incident alone but decided it's best to get this angle to prove without a doubt it's him and can't be denied or blamed on anyone else." The attached photos showed Williams sitting at his desk looking at pornography on his computer screen.

After receiving the additional photographs, Syed and Jones went to Mosqueda's workstation to confirm that Williams's computer screen could be viewed from Mosqueda's workstation. Later, on April 13, 2018, Cervantez and Syed consulted with Jones and decided to terminate Williams based on the evidence that he was viewing pornography on the company's computer. Syed and Chris Altomare, who was Williams's supervisor, met with Williams and told him he did not pass probation and he was being terminated. Williams asked why, and Syed did not specifically mention pornography but said something such as, "[Y]ou know what you did." Syed also asked Williams if he was familiar with Simpson's IT policy. The IT policy, also referred to as the end user policy, prohibits employees from intentionally using Simpson's computers to "display, download, store, receive or send" pornographic material.

## II. Procedural History

### A. *Williams's Complaint*

Williams sued Simpson for defamation and later filed a second amended complaint adding a cause of action for retaliation in violation of FEHA. Williams alleged he had been falsely accused of viewing pornography

5

at work and that the false statement was published to his former coworkers and supervisors. He also alleged that he was terminated for reporting what he reasonably believed was harassment.

## B. *Simpson's Summary Judgment Motion*

Simpson moved for summary judgment or, in the alternative, summary adjudication on both claims.[2] Regarding the retaliation claim, Simpson argued: (1) Williams could not establish he engaged in a protected activity because he lacked a good faith subjective and objectively reasonable belief that he was reporting unlawful conduct when he informed his supervisors that browser tabs with the words " 'Porn' " and " 'XXX' " appeared on his computer; (2) Simpson had a legitimate, nonretaliatory justification for terminating Williams based on the multiple credible reports that Williams was viewing pornography at work; and (3) Williams had no substantial responsive evidence of pretext or retaliatory animus. In opposition, Williams argued he found the browser tabs "pretty offensive" and "disturbing." He further argued there was evidence of pretext based on Simpson's failure to investigate the possibility that Mosqueda was motivated to have Williams terminated because Williams was hired instead of Mosqueda's brother. According to Williams, it was reasonable to infer from the evidence that Simpson encouraged Mosqueda to frame Williams when Simpson referred to "a better angle or view" after receiving the initial photos from Mosqueda.

The trial court granted summary adjudication as to Williams's retaliation claim, finding that no "hypothetical reasonable jury could find that [Williams] reasonably and in good faith engaged in protected

---

[2] The trial court denied summary adjudication as to the defamation claim. This claim was tried, and a jury returned a verdict in favor of Simpson. The defamation claim judgment is not at issue on appeal.

6

activity . . . ." The trial court reasoned that Williams's single report about pornographic browser tabs "would not put a hypothetical reasonable employer on notice that Plaintiff was attempting to make a claim of discrimination or harassment against the company, particularly when, by his own admission, he did not view any pornography but merely tabs on his Internet browser for pornographic websites."

## C. *Trial Court Order Awarding Simpson Costs*

In February 2021 a jury returned a verdict in favor of Simpson on the defamation claim. On March 2, 2021, the trial court entered judgment in favor of Simpson and ordered that Simpson should be awarded costs in an amount to be determined. On August 17, 2021, the trial court issued an order denying plaintiff's motion to strike and granting in part plaintiff's motion to tax costs, which awarded Simpson $46,227.63 in costs as the prevailing party.[3]

## DISCUSSION

## I. Summary Adjudication Review

Summary adjudication is proper where there is no triable issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f).) We review the trial court's decision de novo and consider all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

---

[3] Although the trial court did not enter the August 17, 2021, order until after Williams filed his notice of appeal on June 25, 2021, when a judgment awards costs to a prevailing party and provides for the later determination of the amount, the notice of appeal subsumes the later order setting the amount of the award. (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998.)

7

## II.    Burden Shifting in Retaliation Claims Under FEHA

California has adopted the federal burden shifting test for assessing employment discrimination claims. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354.) "[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.]  Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.]  If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1042.)

"In responding to the employer's showing of a legitimate reason for the complained-of action, . . . ' " . . . the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [ . . . asserted] non-discriminatory reasons.' " ' " ' " (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388–389, italics omitted.)  "The plaintiff must do more than raise the inference that the employer's asserted reason is false.  '[A] reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.' [Citation.]  If the plaintiff produces no evidence from which a reasonable fact finder could infer that the employer's

true reason was discriminatory, the employer is entitled to summary judgment. [Citation.]" (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003, italics omitted.)

"Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it 'remains subject to careful scrutiny.' [Citation.] The employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations.' [Citation.] The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.' " (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159.)

## III. Trial court did not err in granting summary adjudication on Williams's retaliation claim.

Under FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h).) The trial court granted summary adjudication for Simpson because it found that Williams's reports to his supervisors that "some unknown person or persons had visited pornographic websites using his computer" and his request that the IT team should investigate "would not put a hypothetical reasonable employer on notice that Plaintiff was attempting to make a claim of discrimination or harassment against the company, particularly when, by his own admission, he did not view any pornography but merely tabs on his Internet browser for pornographic websites."

9

Williams argues that his report of pornography in the workplace, "which could have been viewed by anyone in the Production Office, including a female co-worker Nora," constituted a reasonable and good faith report of sexual harassment. Simpson responds that Williams failed to show he had a subjective good faith belief that someone at Simpson was engaged in an unlawful employment practice and that his belief was objectively reasonable. (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 383.) Further, Simpson asserts, there is no evidence that Simpson knew Williams's reports regarding the browser tabs were based on his opposition to unlawful activity. (*Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1046 ["an employee's unarticulated belief that an employer is engaging in [unlawful conduct] will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in [unlawful conduct]"].)

We need not decide whether Williams's report to his supervisors of Internet browser tabs referring to pornographic Web sites constitutes protected activity under FEHA. Even assuming, without deciding, that Williams engaged in protected activity and established a prima facie case of retaliation, summary adjudication was proper because Simpson demonstrated a legitimate, nonretaliatory reason for terminating Williams and Williams failed to produce substantial responsive evidence of pretext or retaliatory animus. (*Hicks v. KNTV Television, Inc., supra*, 160 Cal.App.4th at p. 1003; *Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140 [on appeal following summary judgment the trial court's reasoning is irrelevant and ruling must be affirmed on any ground supported by the record].)

10

Simpson produced evidence that it received multiple reports of Williams's viewing pornography at work, including anonymous notes and multiple photographs of Williams's computer displaying pornographic images, including several photographs with Williams in the frame. Simpson also produced evidence that the IT department investigated the Internet cache associated with Williams's computer and determined that Williams's account had accessed "adult site information." Simpson's evidence was sufficient to meet its burden to demonstrate a legitimate, nonretaliatory reason for terminating Williams, and Williams does not contend otherwise.

The burden then shifted to Williams to prove intentional retaliation by producing " 'substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' " (*Hicks v. KNTV Television, Inc.,* *supra,* 160 Cal.App.4th at p. 1003.) Williams must do more than raise the inference that Simpson's asserted reason is false. " '[A] reason cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.' " (*Hicks*, at p. 1003.)

Williams claims there is a factual dispute as to whether he could establish that Simpson's purported reason for the termination was a pretext for retaliation. He asserts Simpson knew that Mosqueda asked about a family member being hired for the position held by Williams but then Simpson accepted Mosqueda's e-mails and photographs "at face value" and "failed to investigate the possibility that Mosqueda had a motivation to get

11

Williams terminated."  We find this evidence falls far short of meeting Williams's burden.

First, Mosqueda's testimony recounts a single discussion initiated by Mosqueda's supervisor, Flores, during which Mosqueda suggested the possibility of having his brother, who was not yet in the country, apply for the position.  Williams cites to no evidence that any of the Simpson employees who made the decision to terminate him knew that Mosqueda previously suggested his brother for the position.  The decision to terminate Williams was made by Syed, Cervantes, and Jones; Flores was not involved.

More importantly, Williams's argument regarding Mosqueda's alleged motive for terminating Williams and the suggested inference that Simpson encouraged Mosqueda to frame Williams do not establish retaliatory animus based on Williams's prior reporting of browser tabs referencing pornography. (*Featherstone v. Southern California Permanente Medical Group, supra*, 10 Cal.App.5th at p. 1159 ["The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination' "].)  "[A]n inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statutes do not prohibit lying, they prohibit discrimination. . . .  [T]here must be evidence supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions."  (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at pp. 360–361, italics omitted.) Williams produced no evidence that Simpson's actions were motivated by retaliatory animus against Williams.

Williams also cites to Cervantez's testimony that Simpson did not consider the fact that he reported pornography references in his browser tabs

12

when it decided to terminate him. It is unclear why Williams believes this testimony supports his claim of retaliation. This evidence demonstrates that Williams's report of browser tabs referencing pornography—which Williams asserts was a protected activity—was *not* a factor in Simpson's decision to terminate Williams. Thus, Simpson could not have retaliated against Williams for reporting the pornography references.

Williams later inconsistently argues, with a citation to his own declaration filed in opposition to Simpson's motion for summary judgment, that Simpson's plant manager "did not deny that Williams's reporting of pornography was the reason for the termination when directly asked by Williams in the termination meeting." Williams's declaration states that during his April 13, 2018 meeting with Syed and Altomare, Syed asked him if he knew what the "end-user agreement" was, and Williams said "that it has to do with the Internet. I said so you're telling me this is directly related to the situation that I reported. Syed did not respond." Leaving aside Williams's contradictory arguments, we find that Syed's silence does not "prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.' " (*Featherstone v. Southern California Permanente Medical Group, supra*, 10 Cal.App.5th at p. 1159.) Williams failed to produce evidence from which a reasonable trier of fact could conclude that Simpson was motivated to terminate Williams based on his report of pornographic references on his browser tabs.

## IV. Costs Award

Williams contends the trial court's award of $46,277.63 in costs to Simpson was erroneous. He argues that certain of the costs are subject to the FEHA, which requires a finding that his FEHA claim was frivolous, unreasonable, or groundless. Williams argues the trial court did not apply

13

the FEHA statute to the costs associated with his FEHA claim and instead erroneously applied Code of Civil Procedure section 1032, subdivision (b). As to the remaining costs, including those incurred for the trial of the defamation claim, Williams argues the trial court failed to consider his ability to pay.

We find the trial court properly awarded Simpson its costs incurred after the trial court's January 14, 2021, ruling granting summary adjudication in favor of Simpson on Williams's FEHA claim. However, as to the costs incurred prior to January 14, 2021, the trial court failed to make the requisite written findings that Williams's FEHA claim was frivolous, unreasonable or groundless.

## A. *Statutory Authority for Awarding Costs*

The general rule for civil cases is: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) "In actions brought under FEHA, Government Code section 12965, subdivision (b) states, 'the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees.' The Supreme Court in *Williams* [*v. Chino Valley Independent Fire Dist.* (2015)] 61 Cal.4th 97 held this provision for a discretionary cost award is an 'express exception' to section 1032, subdivision (b)'s mandate to award costs to a prevailing party. (*Williams*, at p. 105.) In authorizing discretionary awards of attorney fees and costs under Government Code section 12965, subdivision (b), the Legislature 'sought "to encourage persons injured by discrimination to seek judicial relief." ' (*Williams*, at p. 112.) Because the statute makes awards for costs and attorney fees discretionary, the Supreme Court determined the Legislature intended the court to exercise

14

its discretion in the same manner for both and the rule established by *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n* (1978) 434 U.S. 412 [citations] applied to both attorney fees and costs. (*Williams,* at pp. 114–115.) Under this standard, the court concluded '[a] prevailing *defendant . . .* should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so.' (*Id.* at p. 115.)" (*Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 519–520, 1st & 2d bracketed insertions added.)[4]

In *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, the court addressed how costs may be awarded in an action, such as this one, where the plaintiff alleges both FEHA and non-FEHA claims. *Roman* explained that if the non-FEHA claims led the defendant to incur additional allowable costs, the defendant would be entitled to recover those costs under Code of Civil Procedure section 1032, subdivision (b) without first satisfying the standard of *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n* (1978) 434 U.S. 412. (*Roman*, at p. 1059.) As to costs that cannot be apportioned between overlapping FEHA and non-FEHA claims, *Roman* found that Government Code section 12965, former

---

[4] Effective January 1, 2022, the Legislature renumbered former subdivision (b) of Government Code section 12965 as current subdivision (c)(6). (Stats. 2021, ch. 278, § 7, No. 5A Deering's Adv. Legis. Service, p. 970.) Section 12965, subdivision (c)(6) states: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees, except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so."

subdivision (b) controls.  (*Roman*, at p. 1062.)  "Unless the FEHA claim was frivolous, only those costs properly allocated to non-FEHA claims may be recovered by the prevailing defendant."  (*Ibid.*)

This case involves two broad categories of costs:  (1) those incurred before the January 14, 2021 ruling granting Simpson summary adjudication on Williams's retaliation claim; and (2) those incurred after the January 14, 2021 ruling when the only remaining claim was defamation.  We begin with the second category first.

**B.**   ***Trial court did not err in awarding Simpson costs incurred after January 14, 2021 summary adjudication order.***

The total costs incurred in the second category is $31,671.49, comprised of $5,923.13 for demonstrative trial exhibits; $18,421.50 for court reporting services at trial; $2,624.50 for the deposition of Williams's retained expert Neil Broom taken on January 18, 2021; $1,579.55 for the deposition of Williams's retained expert George Reis taken on January 18, 2021; $2,237.52 for the deposition of Williams's nonretained expert Tam-Me Jackson taken on January 20, 2021; and $885.29 for defending the deposition of Simpson's retained expert James Vaughn on January 19, 2021.

Williams takes issue with Simpson's argument that the costs of the depositions taken after the summary adjudication of the FEHA claim are allocable to the defamation claim.  He argues that these depositions included testimony regarding issues relevant to Williams's FEHA claim and, therefore, "those depositions did not increase Simpson's cost by virtue of the defamation claim, i.e., if Williams had only pleaded a FEHA claim those depositions still would have been taken."  We reject Williams's argument.  If he had pleaded only a retaliation claim, then summary judgment, rather than summary adjudication, would have been granted on January 14, 2021, and no further depositions would have been taken.  Because the defamation claim was the

only claim remaining after the January 14, 2021, ruling, it follows that the costs of depositions taken after that date were costs for "deposition[s] not otherwise required to contest the FEHA claim . . . ." (*Roman v. BRE Properties, Inc., supra*, 237 Cal.App.4th at p. 1059.)

These costs are recoverable as a matter of right under Code of Civil Procedure section 1032, and the award of these costs was not error. (*Roman v. BRE Properties, Inc., supra*, 237 Cal.App.4th at p. 1062 [costs related to non-FEHA claim are recoverable by prevailing party under Code Civ. Proc., § 1032].)

Williams also argues that the trial court failed to exercise its discretion to consider Williams's financial condition when it awarded these costs. We disagree. Williams presented this issue to the trial court for the first time in his reply brief filed in support of his motion to strike or tax costs. Williams's belated argument regarding his ability to pay was supported by his April 23, 2021 declaration, which stated: "I was unemployed for a period of about a year after my termination by Simpson. Since March 2019, I have only earned about $1,700 per month on average from self-employment." Williams asks us to assume the trial court failed to exercise its discretion to consider Williams's financial condition because the trial court's order is silent on this point. This we will not do. It is well established that " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Here, Williams raised his ability to pay, albeit belatedly, in his reply brief. The trial court's order states it considered the parties' papers submitted in

17

support of and in opposition to Williams's motion to strike and/or tax costs and the oral argument of counsel at the May 24, 2021 hearing. Williams opted not to include the hearing transcript in the appellate record. On this record, there is no basis from which to conclude that the trial court failed to consider Williams's financial condition.[5] (*Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 72.)

Williams further argues that whether the trial court erred by not reducing the costs award based on Williams's ability to pay is a legal issue based on undisputed facts. Williams cites *Roman v. BRE Properties, Inc., supra*, 237 Cal.App.4th 1040, and *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859 (*Rosenman*) in support of his argument that the trial court was required to consider Williams's ability to pay. However, neither case discusses whether consideration of ability to pay is required as to costs allocable only to non-FEHA claims. (*Roman*, at p. 1062 ["trial court has discretion to deny or reduce a cost award to a prevailing FEHA defendant when a large award would impose undue hardship on the plaintiff"]; *Rosenman*, at pp. 864–869 [discussing award of attorney fees to successful defendant in FEHA claim].) As discussed *ante*, we find the $31,671.49 in costs incurred by Simpson after January 14, 2021, are solely allocable to the defamation claim and are recoverable as a matter of right. (See *LAOSD Asbestos Cases* (2018) 25 Cal.App.5th 1116, 1124–1125 [rejecting argument that court has authority to

---

[5] We note that the minimal financial information provided in Williams's declaration is significantly less than what *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188 suggests could support an inability to pay a fee award under the FEHA. (*Id*. at p. 1204 [suggesting a declaration setting forth gross income, net income, monthly expenses, and assets].)

18

analyze ability to pay when awarding costs under Code Civ. Proc., §§ 1032, 1033.5].)

Williams fails to persuade us that the trial court erred either factually or legally by awarding Simpson $31,671.49 in costs incurred after January 14, 2021.

**C.** ***Williams forfeited challenge to Simpson's filing fees, service of process fees, and witness fees.***

In his motion to strike and/or tax costs, Williams did not challenge the following costs sought by Simpson:  $935 for filing and motion fees, $912.50 for service of process, and $210 for witness fees.  Simpson noted Williams's concession as to these costs totaling $2,057.50 in its opposition to Williams's motion to strike and/or tax costs, and Williams did not contest the issue in his reply brief.  Accordingly, Williams has forfeited any claim that the trial court erred in awarding Simpson $2,057.50 for costs Williams never contested. (*Boyd v. Oscar Fischer Co.* (1989) 210 Cal.App.3d 368, 383 [any objections not stated in motion to tax costs are waived].)

**D.** ***Balance of Costs Incurred Prior to Dismissal of FEHA Claim***

The remaining costs that were awarded to Simpson total $12,498.64 and are attributable to 11 depositions taken before Williams's retaliation claim was dismissed and the costs for a court reporter for the parties' summary adjudication hearings.  Simpson acknowledged below that certain of these depositions were necessary for the FEHA claim and argued that others related only to the defamation claim.  Simpson also argued that because Williams's retaliation claim was frivolous, Simpson was entitled to recover all of its costs under the FEHA.  The trial court's order is silent as to whether it found any of Simpson's claimed costs allocable to the FEHA claim

19

and if so, whether such costs could be awarded because the FEHA claim was frivolous.

Ordinarily, we would presume that the trial court's ruling is correct and that the court made the necessary findings in support if its ruling. (*Denham v. Superior Court, supra*, 2 Cal.3d at p. 654.) However, a prevailing defendant in a FEHA claim is entitled to fees only in cases where the plaintiff's claim was frivolous, unreasonable, or without foundation. (*Rosenman, supra*, 91 Cal.App.4th at pp. 864–866; see *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 [applying same reasoning to an award of costs under Gov. Code, § 12965, former subd. (b)].) *Rosenman* imposed "a nonwaivable requirement that trial courts make written findings" reflecting the criteria supporting an award "in every case where they award attorney fees in favor of defendants in FEHA actions." (*Rosenman*, at p. 868.) Because the required written findings were not made by the trial court, we must reverse and remand, unless we determine that no such findings reasonably could be made from this record. (*Ibid.*)

On this record, we cannot say that the required finding would be unreasonable in this case. The trial court could reasonably determine that Williams's retaliation claim was objectively without foundation and therefore Simpson is entitled to its costs. (*Roman v. BRE Properties, Inc., supra*, 237 Cal.App.4th at p. 552.) This is a question for the trial court to determine in the first instance. (*Id.* at p. 553.) Accordingly, we remand for the trial court to determine whether Simpson may be awarded the $12,498.64 in costs it incurred prior to the dismissal of Williams's retaliation claim because the retaliation claim was frivolous, unreasonable or without foundation. (*Rosenman, supra*, 91 Cal.App.4th at p. 859.) On remand, the trial court shall also determine whether any portion of the $12,498.64 is attributable

20

solely to Williams's defamation claim, and if so, that portion shall be recoverable by Simpson.  Any portion of the $12,498.64 attributable to Williams's retaliation claim, or that cannot be apportioned between the defamation claim and the retaliation claim, may only be awarded to Simpson if the trial court determines that Williams's retaliation claim was frivolous. (*Id.* p. 1062.)

## DISPOSITION

The order awarding Simpson costs of $46,227.63 is vacated, and the case is remanded for further proceedings consistent with this opinion.  On remand, the trial court shall award the $33,728.99 in costs (comprising $31,671.49 incurred after the dismissal of Williams's retaliation claim plus $2,057.50 which Williams did not contest in the trial court).  As to the $12,498.64 in costs Simpson incurred prior to the January 14, 2021, summary adjudication ruling, the trial court shall determine whether these costs are allocable to Williams's retaliation claim, and if so, they may only be awarded if the trial court makes the express written findings as required under Government Code section 12965, subdivision (c)(6).  In all other respects, the judgment is affirmed.  The parties are to bear their own costs on appeal.

_____
Jackson, P. J.

WE CONCUR:


_____
Simons, J.


_____
Burns, J.


A162992/*Williams v. Simpson Strong-Tie Co. Inc.*

22